IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MARYLAND


UNITED STATES OF AMERICA,           )
                                    )
            Plaintiff,              )
       vs.                          )
                                    )  CRIMINAL NO.: JKB-17-0106
DANIEL THOMAS HERSL,                )
                                    )
            Defendant.              )
                                    )
_____)


Transcript of Proceedings
Before the Honorable James K. Bredar
Tuesday, March 7th, 2017
Baltimore, Maryland


For the Plaintiff:

      Leo J. Wise, AUSA
      Derek Hines, AUSA


For the Defendant:

      Peter Goldman, Esquire


Also Present:  Special Agent Erica Jensen, FBI



Christine T. Asif, RPR, FCRR
Federal Official Court Reporter
101 W. Lombard Street, 4th Floor
Baltimore, Maryland 21201

P R O C E E D I N G S

THE COURT:  Good afternoon.  Be seated, please.

Mr. Wise, you may call the case.

MR. WISE:  Thank you, Your Honor.  Leo Wise and Derek Hines for the United States, and with us at counsel table is Special Agent Erica Jensen of the FBI.  The case is the United States of America versus Daniel Hersl, criminal No. JKB-17-106.  And we're here this afternoon on the defendant's motion to review the detention order.

THE COURT:  Thank you.  Thank you, Mr. Goldman.

MR. GOLDMAN:  Good afternoon, Your Honor.  Peter Goldman on behalf of Mr. Hersl, who is present.

THE COURT:  And, sir, you are Daniel Hersl?

THE DEFENDANT:  Yes, sir.

THE COURT:  Good afternoon to you.

THE DEFENDANT:  Good afternoon, Your Honor.

THE COURT:  We're convened this afternoon pursuant to Title 18 of the United States Code, Section 3145(b).  The defendant, through counsel, having filed a motion seeking review of the detention order that was entered by my colleague Magistrate Judge Stephanie Gallagher.  When was this, last week?  Friday?

MR. GOLDMAN:  Thursday of last week.

THE COURT:  Thank you.  And in her order of detention, which is paper No. 60, she made certain findings of

1    fact in relation to the government's request that the

2    defendant be detained without bail and then ordered his

3    detention on the basis of the danger that he poses to the

4    community's safety in her mind.  The law is clear in setting

5    out the procedures that we're to follow at this point.  This

6    proceeding will function as a de novo reconsideration of what

7    the magistrate judge ordered.  And if either of you has a view

8    different from that, you should tell me now.  I don't see

9    either one of you standing up, so that's where we're headed.

10          Mr. Wise, does the government wish to proceed by

11   live evidence or by proffer this afternoon?

12          MR. WISE:  By proffer, Your Honor.

13          THE COURT:  I will entertain your proffer.  You may

14   proceed.

15          MR. WISE:  Thank you, Your Honor.  The United States

16   moves for the defendant's detention under two provisions of

17   3142; 3142(f)(1)(A) because the defendant is charged with

18   committing crimes of violence, and 3142(f)(2)(B) because there

19   is, quote, a serious risk that the defendant will obstruct or

20   attempt to obstruct justice or threaten, injury, or

21   intimidate, or attempt to threaten, injury, or intimidate a

22   prospective witness or juror.

23          In this case, Your Honor, each of the episodes of

24   robbery --

25          THE COURT:  So let's talk about some basic things in

1    terms of standards.  If you want him detained on dangerousness

2    grounds, what standard do you have to meet?  Is that a --

3              MR. WISE:  Clear and convincing.

4              THE COURT:  Okay.  Thank you.  And what about on

5    obstruction grounds?

6              MR. WISE:  Same, I believe, Your Honor.

7              THE COURT:  Okay.  Agreed, Mr. Goldman?

8              MR. GOLDMAN:  Yes, Your Honor.

9              THE COURT:  And then the question of presumptions,

10   if any, that the government invokes.

11             MR. WISE:  This is not a presumption case, Your

12   Honor.

13             THE COURT:  And I assume you agree with that, Mr.

14   Goldman?

15             MR. GOLDMAN:  Yes Your Honor.

16             THE COURT:  Thank you.  You may continue, Mr.

17   Wise.

18             MR. WISE:  Thank you, Your Honor.

19             Your Honor, if this were a case where a series of

20   robberies were charged, the government would be seeking the

21   detention of the defendants engaged in those robberies in

22   order to protect the community.  What makes this case and

23   these facts worse is, that in each instance the defendant and

24   his co-defendants engaged in obstruction of justice in order

25   to conceal the evidence of the robberies and extortions in

which they participated.

In each case they filed false incident reports with the Baltimore Police Department that were relied on by city state's attorneys and judges and other actors in the criminal justice system.  Those became, in some cases, statements of probable cause and charging documents that determinations were made about charging individual defendants.  They created false property receipts to conceal the money, property, and narcotics they had stolen.  They coached one another --

THE COURT:  If the Court accredits that part of your proffer at the conclusion of this hearing, would that information tend to reflect on the trustworthiness of the defendant?

MR. WISE:  Absolutely, Your Honor.

THE COURT:  Does the -- you have not sought his detention on the grounds that he's a flight risk?

MR. WISE:  No, Your Honor.  But we think trustworthiness goes to the heart of supervision, because the task, in this case the very difficult task Pretrial Services would have, would be to have to trust the defendant to abide by conditions, to provide them with accurate information.

THE COURT:  Sure.  I'm not having any quarrel with you about that.  I'm just curious why you're not seeking his detention on flight risk grounds if you believe that he's not trustworthy and have the evidence, at least in your proffer,

1    to back up that proposition.  And a related question then is

2    whether the Court retains the authority to detain someone on

3    its own motion on flight risk grounds based on the information

4    presented to it.

5         MR. WISE:  I believe the Court does to answer your

6    second question first.

7         THE COURT:  The Court always retains that.  The

8    Court doesn't have the authority to move ahead on its own

9    motion on a dangerousness proposition, that requires a motion

10   from the government.

11        MR. WISE:  Right.

12        THE COURT:  What about obstruction, does it fall in

13   the first category where flight risk is, which is the Court

14   can make that determination on its own motion, or is that

15   something on which the government has to move?  I understand

16   that's moot because you have moved, but I still want to know

17   where it exists in the hierarchy.

18        MR. WISE:  I believe the Court or the government can

19   move on the basis of obstruction.  I believe that's -- I don't

20   have the statute in front of me, but I believe those sections

21   of (f)(2) can be on the motion either of the government or the

22   Court.

23        THE COURT:  Okay.  Please continue.

24        MR. WISE:  Your Honor raises a central issue, and

25   that is the trustworthiness of the defendant and why the risk

1   of obstruction matters so much to the determination of whether

2   there are conditions that can reasonably assure the safety of

3   the community.  If Pretrial Services can't trust the

4   defendant, trust the responses they give to questions, trust

5   that they will abide by the conditions set on them, then

6   Pretrial Services can't protect the community by supervising

7   the defendant.

8        And what we've seen in this case is really almost

9   uniquely these defendants, and this defendant in particular,

10  has had multiple interactions with the criminal justice

11  system, not from the point of view of someone who's been

12  charged with crimes, but on the other side, where they have --

13  and he has taken an oath to uphold the law and to enforce it

14  and instead has sought to undermine the integrity of the

15  criminal justice system by repeatedly making faults

16  presentations to various actors within the criminal justice

17  system.  And the defendant's motion now makes the claim that

18  in light of all of that conduct he can be trusted, for no

19  other reason than the fact this he says he can be trusted,

20  going forward to abide by these -- by conditions that are set

21  on him.

22        In our motion we highlight a number of examples of

23  obstructive conduct.  A lengthy one is where the defendant and

24  his co-defendants actually engineer -- where the defendant

25  actually engineered the arrest of a defendant in order to

1    prevent him from going to trial the next day, so that one of

2    the defendant's co-defendants wouldn't have to testify,

3    because the defendants had robbed this person.

4           And it was Defendant Hersl's idea, as the

5    intercepted communications make clear, that if they arrested

6    him the night before on an outstanding warrant they had found

7    in Anne Arundel County, prisoner transport couldn't get him in

8    front of Judge Peters the next day.  And so the trial would be

9    postponed.  And they spent the better part of a day causing

10   this scenario.  And working and manipulating other law

11   enforcement officers to effect the arrest of this person to

12   prevent him from having his day in court the next day.

13          And that's when the stakes were not that this

14   defendant was charged in a federal racketeering case.  That's

15   when the stakes were only that they wanted to try to shield

16   Defendant Gondo from having to testify for fear that under

17   those circumstances it might expose the defendant's criminal

18   conduct.

19          In our response we also discuss -- again, Your

20   Honor, I have an extra copy of the motion if you'd like me to

21   hand it up.

22          THE COURT:  Why don't you do that.  We got in here

23   without our hard copy.  Thank you.

24          MR. WISE:  We also describe, this case involves both

25   robberies and extortion and overtime fraud.  And the overtime

1    fraud is relevant for a couple of reasons, one of which is

2    because those are also examples where the defendant provided

3    false information that he certified was true.  And as we

4    describe in the motion, in one episode in particular he did

5    that to cover up the fact --

6              THE COURT:  You're referring to the motion, but you

7    mean your response.

8              MR. WISE:  Yes, I'm sorry, Your Honor.

9              THE COURT:  That's what's confused us.

10             MR. WISE:  Got it.  And ours is Document No. 79.

11             THE COURT:  79.

12             MR. WISE:  And as we describe in Document No. 79,

13   the defendant and his co-defendants were involved in a high

14   speed crash and this was --

15             THE COURT:  What page are you on?

16             MR. WISE:  This is page 8.  On August 31st of 2016.

17   We know about this because we had a listening device in the

18   car of -- one of the cars the defendants were operating.  They

19   were involved in a high speed crash.  They chose not to

20   respond to the scene and instead waited to see who responded.

21   And then the defendant himself volunteered that they could lie

22   about their time and attendance to make it look like they were

23   off duty at the time of the accident.

24             A third episode we described is one in which, also

25   in August, where the Defendant Hersl talks about despite the

1    fact he had been issued a body camera from BPD, he didn't

2    intend to use it.  Instead he intended to keep it locked up in

3    his truck.  And then as he put it, maybe just one day go out

4    when we're not doing something, since I have it on, and tape

5    some video.

6            These are three, just three examples of where the

7    defendant has engaged in obstructive conduct, again, when the

8    stakes were much, much less.

9            We also cite specific examples where he personally

10   submitted false incident reports in two robberies where he

11   alone among the defendants committed those crimes.

12           In terms of the second factor that the Court is to

13   consider, the weight of the evidence, and as we proffered

14   before Magistrate Judge Gallagher, the FBI in this case

15   intercepted telephone communications, installed a listening

16   device in the BPD vehicle used by these officers, obtained

17   City Watch camera footage for these episodes, and CCTV camera

18   footage for these episodes, interviewed, and these witnesses

19   provided sworn testimony of victims and witnesses, obtained

20   similar testimony from law enforcement officers that were not

21   involved in these episodes but that corroborated the victims,

22   as well as obtaining contemporaneous jail call recordings,

23   where at the time of the arrest, where the robberies occurred,

24   in what the victims thought were private conversations, they

25   relayed to their family members or other associates that they

1    had been robbed by the defendant and the other defendants in

2    this case, including sometimes the specific amounts of money

3    that were taken, which could then be corroborated later when

4    they were interviewed by law enforcement, and when others were

5    interviewed by law enforcement, and gave consistent testimony.

6           This defendant is charged in more racketeering acts

7    than in any other defendant.  And he is unique in this regard.

8    All of the defendants are charged in Count 1 with

9    participating in a conspiracy once they joined the GTTF.  What

10   investigators learned, to their surprise, was when they looked

11   at Defendant Hersl's conduct before he joined the GTTF, he was

12   also robbing civilians in the previous unit he served with.

13   So in Count 2 he's charged in two episodes of robbing

14   civilians where he's the only officer that participated in

15   that.

16          And I raise that because the racketeering acts that

17   occur within the conspiracy all defendants, and at trial we

18   may see some version of this, will have at least available to

19   them the defense that while I may have been there, but it was

20   the other guy that did it, or if the money is taken on the

21   camera, it wasn't shared with me.  That won't be available to

22   Defendant Hersl for these episodes where he is the sole

23   defendant that interacted with these civilians.  And in both

24   cases took money that they had earned lawfully and intended to

25   use to pay their rent, and just happened to be in the wrong

1      place at the wrong time when they encountered him.

2              Your Honor, in terms of the nature and serious of

3      the danger to any person or the community, you know, the

4      witnesses in this case are terrified of these defendants.

5      They're terrified they will be retaliated against because

6      they've come forward and brought information against police

7      officers.  They're fearful not only of these defendants but of

8      other police officers that they fear may be associated with

9      them or working with them or have sympathy for the position

10     they're in.  Witness after witness has testified to that.

11             And it's not unfounded.  Members of the conspiracy,

12     as we describe in our response, have threatened witnesses,

13     including threatened to have a witness killed if the witness

14     said anything.  And this was confidential informant that in an

15     intercepted communication members of the conspiracy said they

16     would let it be known that this person was a snitch on the

17     street and he would wind up dead if he, quote, "said

18     anything."

19             Members of the conspiracy have also received

20     information from other BPD officers and even from an assistant

21     state's attorney about this investigation.  That kind of

22     information and access to those people exists if the

23     defendant, or frankly, any of the defendants are released.  If

24     the defendant remains detained, his communications which occur

25     over the jail phone system can be monitored.

1          And as Magistrate Judge Gallagher pointed out, a

2    number of the episodes of obstruction that we've highlighted

3    involve the use of the telephone.  And even on the strictest

4    of location monitoring, the government can't monitor this

5    defendant's use of the telephone.  So to the extent he would

6    now, facing such greater stakes, attempt to tamper with

7    witnesses or intimidate witnesses or direct others to do that,

8    there's effectively no way to stop him from doing that.

9          We proffered to Magistrate Judge Gallagher that this

10   defendant is uniquely challenging for Pretrial Services to

11   supervise, precisely because he's a law enforcement officer.

12   And throughout this investigation these defendants evidenced a

13   knowledge of counter law enforcement techniques, including

14   evading surveillance and taking other steps to prevent them

15   from being monitored or supervised, and to prevent their

16   conduct from coming to light of -- to the light of not only

17   the Baltimore Police Department, but its internal

18   investigations division and even the Justice Department's

19   civil rights investigation, which was going on and

20   scrutinizing the department while this conduct was going on.

21         And that's what, as we proffered to the magistrate

22   court, you know, that's part of what has to be evaluated here.

23   Can reasonable conditions be crafted when, under all of the

24   scrutiny and oversight that these defendants were under over

25   the last year, they engaged in this conduct?  And what chance

1    does the Pretrial Services Department have, with far less

2    resources available to it, to try to effectively monitor him

3    now that the stakes are so much higher?

4              Your Honor, we have in this case not a battle of,

5    well, we predict he will be truthful with the criminal

6    justice -- or they predict he will be truthful with the

7    criminal justice system and we predict he won't.  We have his

8    conduct.  We have his conduct in interacting with actors

9    within the criminal justice system to look to, and what he's

10   shown again and again, is that he and his co-defendants have

11   engaged in obstructive conduct.  And they do so regardless of

12   the audience, whether it's the Baltimore Police Department,

13   prosecutors, judges, pretrial service departments at a state

14   level, regardless of whether the information is truthful.  And

15   really in some cases for fairly trivial -- where the stakes

16   are fairly trivial.  Here, where the stakes are so much

17   higher, we think there are no conditions that can reasonably

18   assure the safety of the community, and therefore, the

19   defendant should be detained.

20             THE COURT:  Thank you, Mr. Wise.  Mr. Goldman, do

21   you wish to proceed by proffer, by live evidence, or simply

22   make argument?

23             MR. GOLDMAN:  Proffer and argument.

24             THE COURT:  Okay.  I'll hear you.

25             MR. GOLDMAN:  Your Honor, good afternoon.  First of

all, I think where I want to begin, Your Honor, is by noting,

and I don't know how much weight the Court will give this, but

the government in their papers really talks about -- it talks

about Mr. Hersl has committed crimes of violence, namely

robbery and extortion by state of local government office

employees.  And, in fact, the case is in this court on

basically on two RICO charges.  I don't know beyond that if

this is that important or material for this hearing, but begin

parenthetically, Your Honor, I think that this issue of

whether this is a RICO case and belongs in federal court is

going to be an issue litigated in this case.  I think it's of

some merit here.  I think it's much more of a state law case

and has been shoe horned into federal court.

          Having said that, Your Honor, let's talk a little

bit about Mr. Hersl's background.

          THE COURT:  What's the -- well, now what you're

doing is raising a question about the Court's jurisdiction,

jurisdiction is fundamental.  So we need to get to the end of

that.  What's the problem with the racketeering charge?

          MR. GOLDMAN:  Your Honor, I don't think that they --

I'm not prepared to put on a case today about that.  But I, in

looking at this, there were a series essentially of inter --

of individual, basically, robberies.  The allegations are

robberies, improper actions of criminal suspects, defendants,

and submitting inaccurate time sheets by a group of seven

1    officers.  If the Court -- I'm sure the Court is familiar with

2    the basic elements of what it takes to have a RICO

3    organization.  But I think that this -- I haven't filed papers

4    yet on it.  The case is less than a week old.  But I think as

5    far as this Court's jurisdiction, these allegations are an

6    enormous stretch and quite dubious.

7              THE COURT:  Print the indictment.

8              MR. GOLDMAN:  I'm sorry?

9              THE COURT:  I was directing my clerk to do

10   something.  Go ahead.

11             MR. GOLDMAN:  This is an issue that we will take up.

12   If the case remains in federal court, we're going to be

13   challenging whether this is a RICO -- this meets the elements

14   of a RICO organization.  I think, and in fact what the

15   government talks about in its paper is not RICO, but they talk

16   about robberies under Maryland state -- Maryland state law and

17   extortion by state or local government officer, employees

18   under state law.  Well, Your Honor, those are state law

19   charges, this is --

20             THE COURT:  But state law crimes can be RICO

21   predicates.

22             MR. GOLDMAN:  They can, Your Honor.  I'm just saying

23   initially and parenthetically, I'm not prepared to put on a

24   full case about it today.  I think there are serious questions

25   whether this group of seven officers, with the allegations,

1    constitute a RICO organization and RICO enterprise.  If the

2    case proceeds in this course, I think that's going to be

3    challenged, I imagine not just by my client.

4         THE COURT:  Well, you know, you're either

5    challenging it right now or you're not.  If -- and, you know,

6    out of an abundance of caution, I'm going to treat your

7    statements at the opening of your presentation here as a

8    suggestion that the Court lacks jurisdiction in the case,

9    because the underlying indictment doesn't succeed in alleging

10   a federal crime.

11        MR. GOLDMAN:  Your Honor --

12        THE COURT:  So let's get into it.  Where's the

13   indictment?

14        MR. GOLDMAN:  Without prejudicing our right to argue

15   it later in the litigation, I think that that would certainly

16   be a good place to start.  I think this is a state law case.

17   It's not a federal RICO case, under 18 U.S.C. 1962.  They've

18   gotten it past a grand jury, but I don't think that it's --

19   it's a proper federal court RICO case.

20        THE COURT:  Well, I don't know -- I'm having a

21   little trouble understanding what your specific allegation is.

22   You can offer that opinion, but all I've heard in the nature

23   of legal argument from you so far is that the RICO predicates

24   alleged are themselves the product of state statutory schemes.

25   But in my experience, in RICO cases, frequently the predicates

1    are exclusively violations of state law.

2            MR. WISE:  And, Your Honor --

3            THE COURT:  Maryland law bribery of a public

4    official comes prominently to mind as a RICO predicate that

5    has had the Court's attention to a significant extent in the

6    very recent past, very much a state offense.  So let's --

7            MR. WISE:  Your Honor, if I may 1961(1),

8    specifically defines racketeering activity as any act or

9    threat involving -- as this case is charged -- robbery,

10   extortion, which is chargeable under state law and punishable

11   by imprisonment for more than one year.  And both of the

12   Maryland statutes charged as predicates are obviously robbery

13   and extortion statutes.  And the term of imprisonment for each

14   of them is for more than one year.

15           In terms of the enterprise, the enterprise charged

16   here is the Baltimore Police Department.  I don't think as a

17   factual matter it will be contested that the Baltimore Police

18   Department doesn't exist.

19           MR. GOLDMAN:  So is the government charging the

20   entire police department as a RICO organization?

21           MR. WISE:  As the indictment clearly articulates,

22   the enterprise in this case is the Baltimore Police

23   Department.  And the defendants engaged in a pattern of

24   racketeering activity that affected the conduct of the

25   Baltimore Police Department.  This is a case where the

1    enterprise is a legitimate organization, like a business

2    that's infiltrated by the mob, and the conduct are the

3    extortion acts and the robberies and the overtime fraud that

4    are identified in the indictment.

5              THE COURT:  Mr. Wise, on what page of this lengthy

6    indictment are the statutory schemes set out that you claim

7    were violated by these defendants in their execution -- in

8    their conspiratorial activities.

9              MR. WISE:  In Count 1, Your Honor, at paragraph

10   15.

11             THE COURT:  Give me a page?

12             MR. WISE:  Page 4.

13             THE COURT:  Right.  Got it.  So you've got wire

14   fraud alleged.

15             MR. WISE:  Yes.

16             THE COURT:  Then you've got robbery alleged under

17   the Maryland Criminal Article.

18             MR. WISE:  Right.

19             THE COURT:  And then you've got extortion alleged.

20             MR. WISE:  Yes, Your Honor.  And then in the

21   substantive count, in each of the racketeering acts, the

22   predicates are repeated.  So that starts at page 27, Count 2.

23   And each racketeering act alleges various combinations,

24   depending on whether the racketeering act was engaged in

25   individually, as in the case of Mr. Hersl's two racketeering

acts at 1 and 2; or as part of a conspiracy, which is the case
with racketeering acts 3 through 10.  And the same state law
predicates are alleged in each of those.  And then the
overtime racketeering acts, the time and attendance
racketeering acts begin at page 42, and they allege violations
of Title 18, Section 1343.

THE COURT:  So Mr. Goldman, your primary attack
seems to be on the way the grand jury described for the Court
the enterprise aspect of their accusation.

MR. GOLDMAN:  Yes, Your Honor.

THE COURT:  Isn't Mr. Wise correct that otherwise
legitimate organizations, whether in his example, a private
corporation; say in my example, a state prison; in the case at
hand, a police department, can be the enterprise that is at
the core of the racketeering charge.  It doesn't itself have
to be an entirely criminal entity; correct?

MR. GOLDMAN:  As an organization, Your Honor --

THE COURT:  I would prefer to use the word
"enterprise," because I think that's the language of the
statute.

MR. GOLDMAN:  The enterprise and the participants in
the RICO conspiracy have to be linked.  There has to be a
connection.  It's -- let me try to answer your question as
best I can.  If you have a corporation or business, Your
Honor, of 5,000 people, and seven of them are committing

1    indiscriminate robberies and submitting false time sheets or

2    pay vouchers, does that make the whole business a criminal

3    enterprise?

4            THE COURT:  By no means.  But if they are engaged in

5    that allegedly unlawful conduct, while in service of the

6    enterprise, that is to say functioning as their bit of the

7    enterprise, that has always been my test for whether or not

8    we've got a sufficient nexus between the larger entity and the

9    criminal activity for purposes of whether or not this can be a

10   RICO enterprise.

11           So I would be with you if the allegations in the

12   indictment were otherwise silent as to the association between

13   these individuals and the police department.  In other words,

14   yeah, they're police officers, but all of this activity with

15   which they're charged is occurred independent of that.

16   They've got some other whole deal going that, you know, it's

17   really almost a coincidence that they happen to all be police

18   officers.  That's when we start to have problems with, well,

19   what's the enterprise for RICO purposes?

20           But in this case, as I read the indictment, the

21   contention of the grand jury is that their criminal activity

22   was completely interwoven with their functioning as police

23   officers or their functioning in their roles as part of this

24   enterprise known as the Baltimore Police Department.  So I am

25   open to being persuaded otherwise, but that -- you are coming

1    after a fundamental understanding that the Court has about the

2    RICO statute.

3             MR. GOLDMAN:  Thank you, Your Honor.  I think Your

4    Honor in my -- I think that the way that the indictment reads

5    is that seven individuals engaged in alleged -- allegedly

6    engaged in criminal conduct, like robbery and extortion,

7    outside of the scope of their duties as -- outside of the

8    scope of their normal functioning and duties as police

9    officers.  Whether the -- and furthermore, I think what is

10   completely absent from the indictment --

11            THE COURT:  But somebody who is, let's say, a

12   correctional officer in a prison who decides that, look, I'm

13   going to start smuggling contraband into this facility, I mean

14   they're arguably -- that's not in their job description.

15            MR. GOLDMAN:  Right.

16            THE COURT:  So, you know, that argument could be

17   made that, well, wait a minute, you're on a frolic and detour

18   here, you are no longer functioning as a correctional officer.

19   That's not what the law says.  That person is in that position

20   and able to do what they're doing, in terms of smuggling stuff

21   in and out of the prison, because they're correctional

22   officers.  Similarly, I understand the contentions here to be

23   that these crimes are in many respects made possible by virtue

24   of the fact that your client, and the others charged, are

25   police officers.  And that would supply this necessary

1    integration between their criminal conduct and the enterprise.

2    And it would seem to me, at first blush, that the basic

3    charging prerequisites of RICO have been satisfied.

4         MR. GOLDMAN:  Your Honor, my reaction is this, and

5    then unless the Court has questions I'll move on, I think if

6    you want to compare, which I think is fair, to the recent jail

7    cases when you talk about 25, 50 or more co-defendants in

8    those cases, I think there has to be a certain level of --

9    certain level of number of people participating to get it into

10   a RICO conspiracy.  And I think as the numbers increase the

11   organization, the detail, the meetings, and sort of the cross

12   referencing among the defendants, increases that breaks the

13   threshold of a RICO enterprise.

14        I think what this indictment says is seven guys who

15   were members of the Baltimore Police at various times,

16   individually or maybe working with a buddy at different times,

17   committed some robberies and submitted false time sheets.  I

18   think we'll get into this more in the litigation, Your Honor.

19   I don't think that that's a -- I don't believe that under the

20   law, under RICO law, I don't believe this is -- I don't think

21   this is going to stand up during the litigation as a RICO

22   enterprise.  I do not.

23        MR. WISE:  Your Honor, the Count 1 that charges a

24   conspiracy charges them for conduct when they were all members

25   of the Gun Trace Task Force.  They were the only members of

1    the Gun Trace Task Force.  And Sergeant Jenkins was its

2    officer in charge.  So Count 1, the conspiracy count, doesn't

3    charge a handful of people who happen to be Baltimore police

4    officers, it charges them when they were all members of the

5    same unit.  Count 2 is the substantive count, which does not

6    allege a conspiracy, but rather covers racketeering conduct

7    that occurred both while they were all members of the same

8    unit, and when -- prior to when they joined, where there is no

9    element of them all agreeing or forming a criminal conspiracy.

10   So that's the difference between the two counts.

11          THE COURT:  Well, I'm satisfied for purposes of this

12   review of a detention order that the Court has jurisdiction in

13   the matter.  I am satisfied for purposes of this hearing only

14   that the indictment adequately alleges the RICO elements, such

15   that we have a credible charge of RICO conspiracy.  It passes

16   muster by that sort of initial standard.  The Court's raised

17   the question of jurisdiction somewhat on its own.  That is

18   satisfied by virtue of the fact that the overall content of

19   the indictment certainly makes out impacts on interstate

20   commerce, which would be the final and ultimate touchstone for

21   jurisdiction over the conduct here.  We have to meet the

22   elements of the RICO statute, but we also have to otherwise

23   meet more general requirements in order to trigger the

24   jurisdiction of a federal court.  But it's amply demonstrated

25   by the content of this count.

1          So let's move past that issue, Mr. Goldman, to what

2     else do you want to present to the Court.

3          MR. GOLDMAN:  Thank you, Your Honor.  Your Honor,

4     let me sort of -- I think the Court has raised risk of flight,

5     let me address that as well as danger to the community.  First

6     of all, Your Honor, a little background on Mr. Hersl, he is 47

7     years old.  He is from this area.  He's never lived anywhere

8     else.  He has a loving and supportive family.  There have to

9     be 15 members here today in support of their brother and

10    uncle.  In particular who is here, Your Honor, is Jane Shott

11    she lives in Kingsville, Maryland.  I believe she has been

12    approved as a potential third party custodian.

13         And with that in mind, Your Honor, we come to court

14    today -- we recognize the allegations here.  We come to court

15    with a -- oh, and my client's 47, he's never been charged with

16    a crime before this.  Your Honor, we come with a very specific

17    plan that will allow both his appearance in this court as well

18    as any issues as to danger to the community.  And with all due

19    respect, I don't think that the government has proven its

20    case, for reasons I said, by clear and convincing evidence.

21         What we're proposing, Your Honor, is that my client

22    be turned over to the third party custody of his sister Jane

23    Shott to live in her home --

24         THE COURT:  When you say you don't think the

25    government has proven it, is it because the charges

1    themselves, as brought by the grand jury, and found to be

2    supported by probable cause, by themselves don't make it?  Or

3    is it your position that those charges coupled with what the

4    government has proffered in their papers and in their oral

5    presentation, doesn't amount to sufficient proof that your

6    client was involved in robberies, obstructive activities and

7    that sort of thing, which is it or is it both?

8            MR. GOLDMAN:  It's both, Your Honor.  And in

9    addition, Your Honor, under 3142(c)(B)(1) (sic) we are

10   proposing --

11           THE COURT:  Let me catch up here, 32.

12           MR. GOLDMAN:  3142.  Under 3142, your Honor,

13   (c)(B).

14           THE COURT:  (c)(1) capital (B)?

15           MR. GOLDMAN:  No -- right, I guess, (c)(1)(B)(i).

16   Your Honor.

17           THE COURT:  (c)(1)(B)(i), remain in the custody of a

18   designated person who agrees to assume supervision and to

19   report any violation of a release condition to the Court if

20   the designated person is able reasonable to assure the

21   judicial officer that the person will appear as required and

22   are not a danger to the safety of another person or the

23   community.  So the classic third-party custody option that

24   magistrate judges frequently invoke.

25           MR. GOLDMAN:  Your Honor, let me tell you what our

1    plan is, in light of the -- we understand the allegations and

2    the sensationalism of the case and the news media coverage.

3    My client would live through the third-party custody of his

4    sister Jane Shott, in her home, with electronic monitoring.

5    He would only be allowed to leave that home, step outside that

6    home, for three reasons; come to this court, come to my

7    office, medical attention.  In order to go to any one of those

8    three places he would have to clear that with a pretrial --

9    the pretrial officer, letting him know where he was going,

10   what time he was leaving, and when he would be returning --

11            THE COURT:  But what you're -- there's no physical

12   restraint on his leaving.

13            MR. GOLDMAN:  Well, he would be wearing the ankle

14   bracelet, Your Honor.

15            THE COURT:  Yeah, but how long does it take for

16   people to respond to some alarm or trigger that the ankle

17   bracelet sets off.

18            MR. GOLDMAN:  That usually does take, Your Honor,

19   probably 24 to 48 hours.

20            THE COURT:  Yeah.  So where is the assurance that he

21   is not going to simply flee?  Where does it come from?

22            MR. GOLDMAN:  Well, Your Honor, this is a life-long

23   resident of this area.  His entire family is here, his life is

24   here.  His son, who he misses terribly, is here.  He has pled

25   not guilty.  He's here to contest the charges, Your Honor.

1          THE COURT:  I understand that.

2          MR. GOLDMAN:  If I can point out, even if -- and the

3     Court is free to go there if you want.  Even Magistrate Judge

4     Gallagher didn't think this was risk of flight case.

5          THE COURT:  I am very aware of her reaction to that.

6     But a person who is released on conditions, even restrictive

7     ones of the sort that you've proposed, has still placed

8     themselves in a position where the Court is trusting them to

9     comply.  It's that trust, it's their promise that they will

10    comply that is being substituted for the physical restriction

11    of their liberty that comes with detention.  So that leads us

12    to the ultimate question, which is the trustworthiness of your

13    client, in light of what is presented.  And I think that

14    that's the kernel of it.

15         MR. GOLDMAN:  Your Honor, I was listening to Mr.

16    Wise and I was writing down, in all due respect, I don't

17    believe this is an issue of trust.  I would like to approach

18    it a different way.  Let's talk -- and this also relates to

19    danger to the community, the allegations of threats to

20    witnesses, and working with other people to do bad things.

21    Your Honor, incarcerated, while phones are monitored, he can

22    have visitors and guests.  All the things the government is

23    claiming potentially he could do that are bad to, let's say,

24    obstruct this case, he can do from jail.  You mentioned the

25    jail cases, Your Honor, at this point we know through bitter

1    experience that people can conduct all kinds of criminal

2    enterprises and actions within a jail and then direct them for

3    things outside the jail.

4              THE COURT:  It's sad that I have to potentially

5    concede that point to you, but even you would concede that

6    there's a difference.

7              MR. GOLDMAN:  There is some difference, but here I'd

8    like -- you know, it's sort of, let me argue the different

9    side of the coin.  The government talks about his knowledge

10   and experience as a -- first of all, Your Honor, let's

11   remember, this is a 47-year-old man who has been a peace

12   officer for 20 years, who has never been convicted of a crime

13   before.  These are allegations.  He has the presumption of

14   innocence.  But the government says that he knows how to do

15   all these things because he's a police officer.

16             Let me tell you what my client knows, and this takes

17   it out of the realm of a trust question into something I would

18   put a knowledge question.  You know, Mr. Wise, and at the last

19   hearing too, he sort of wags his finger and says how can one

20   little pretrial officer supervise this man under the very

21   restrictive plan we've talked about.  Oh, Your Honor, let's

22   have a real conversation here.  My client is under the

23   scrutiny and supervision of this Court and the most

24   powerful -- which he knows -- the most powerful force, that's

25   the United States Government.

1              I'm very glad that an FBI agent is here in court

2    today, because she represents a team, 10, 20, 30 or more FBI

3    agents that are actively working on this case and have put

4    this case together.  There are all kinds of forces, resources,

5    that the United States Government has and continues to devote

6    to this case.  There's one FBI agent here, there's more.  It's

7    the entire pretrial office.  It's the FBI.  It's the U.S.

8    Attorney's Office.  It's the Court.

9              Let's play this out.  Let's bring it into the

10   practical.  The government claims that my client is determined

11   that somehow he's going to do harm to witnesses or take other

12   obstructive -- make other obstructive conduct.  Your Honor, if

13   these things were to occur, you know what my client knows, if

14   anything were to happen to anyone or anything, the first

15   person they're going -- the door they're going to knock, the

16   first person they're going to see, and probably through

17   surveillance, the first person they're going to know who did

18   it is Daniel Hersl.

19             I'm sorry, Your Honor, but the idea that this

20   involves trust and he's in this situation that's less

21   restrictive, he's going to go out and do these things, I'm

22   sorry it's preposterous, it's ridiculous.  He, as a police

23   officer, understands the level of supervision and scrutiny and

24   attention he's under.  He won't leave that house unless the

25   pretrial officer tells him.  We're willing, Your Honor, to not

1    only put him on third party custodian of his sister, who works

2    out of the house and is there every day, and is literally

3    there to supervise him.  But also Your Honor we can limit, he

4    can have no visitors other than family.  And there are simply

5    other things we can do to basically, other than live with his

6    sister in that house, to shut down Daniel Hersl and work with

7    me to prepare his defense to this case.

8        THE COURT:  Mr. Goldman, I've been a judicial

9    officer for 19 years.  12 of those years as a magistrate judge

10   conducting this sort of proceeding on a daily basis, I admit

11   that it now is in my rear-view mirror for the most part, and I

12   will do two or three of these hearings a year.  But I'm

13   sufficiently confident of my memory to say that I don't

14   remember ever letting somebody accused of robbery, armed

15   robbery essentially, out on release.  That just doesn't happen

16   in federal court.  It never happened in my courtroom.

17       What's different about this from a garden variety

18   street robber, who robs banks?  That's who a federal

19   magistrate judge typically sees.  Let alone someone who is

20   accused, and for which the grand jury has found probable cause

21   and a magistrate judge apparently has as well, that they're

22   involved in not just an incidental robbery here and there, but

23   effectively organized criminal activity to rob people.

24       MR. GOLDMAN:  The difference here, Your Honor, is

25   that we're offering a very restrictive plan, where he remains

1    in his sister's home with an ankle bracelet, under her

2    supervision, and the supervision of the Court and all its

3    resources.  This is precisely because it's a very high profile

4    case, with the FBI and the U.S. Attorney's Office and pretrial

5    and the Court, really with an intense amount of scrutiny.

6    What it comes down to, Your Honor, is he understands what he's

7    facing.  He understands that if he were to lift a finger to do

8    anything dishonest to violate any release order, or to do

9    anything obstructive, he knows he would be held to account for

10   it almost immediately.

11         THE COURT:  The stakes are high, you agree with

12   that.  Certainly, Mr. Wise would contend that they're great.

13   Your client has very substantial exposure in the case.  Why

14   doesn't that cut in favor of the notion that, A, he's a flight

15   risk; and B, he would be highly motivated to take whatever

16   steps he could to derail his successful prosecution?

17         MR. GOLDMAN:  Because, first of all, Your Honor,

18   respectfully, we reject any notion this he's a flight risk.

19   He's lived here all his life.  I don't think he has a

20   passport.  His family, who all live in Maryland, are here.

21   His son is here.  He's going to stay here and fight this case.

22   He's not going anywhere.

23         Secondly, Your Honor, you're asking what are the

24   chances, precisely because he knows he's under the scrutiny

25   and supervision attention that he's getting, that any action

1    that it's going to be brought right back at him.  He would be

2    taking an already -- first of all, he knows it's wrong and he

3    wouldn't do it.  Second of all, he knows as a practical matter

4    it would be brought right back at him, it would take a

5    difficult situation and would make it worse.

6          You know, Mr. Wise went through a series of

7    obstructive conducts and he gave the Court a series of

8    examples of allegations in the complaint.  Under our plan,

9    Your Honor --

10          THE COURT:  In the indictment?

11          MR. GOLDMAN:  In the indictment.  Under that, Your

12    Honor, under the plan we're talking -- the problem is what Mr.

13    Wise gave was a great closing argument.  It is not a good

14    argument, Your Honor, in a 3142 hearing, because my client is

15    not going to have the access, he's not going to be able to --

16    the freedom, he's not going to have the flexibility to do any

17    of those things.  He's not submitting time reports.  He's not

18    participating in arrests.  He's not handling paperwork.  He's

19    not -- and also he doesn't have a weapon.  I mean, he's not

20    wearing a uniform living at his sister's home.  So all of

21    those sensational things that Mr. Wise reviewed that are in

22    the indictment, he's not going to have the ability to do any

23    of those things.  He simply can't, Your Honor.

24          And as far as witness intimidation, Your Honor, I've

25    talked to him about it.  He knows, he doesn't need me to tell

1    him, the minute something goes wrong the minute there's a

2    problem they're going to bring it back to him and they're

3    going to make it -- it's going to make an already challenging

4    situation that much worse.  Your Honor, he's -- he knows he's

5    under -- the answer to your question is he knows he's under

6    intense scrutiny, that under the plan that we are proposing

7    he's being watched.  And as a practical matter, Your Honor,

8    there's just -- he wouldn't do it in the first place, but in

9    the second instance if he did, Your Honor, it's just going to

10   be brought right to me.  He knows this at this point.

11          There are two world here, Your Honor, there's the

12   world of pre March 1, when he was arrested, you have those

13   allegations.  But the whole world for this gentleman has

14   changed post arrest, post indictment, and sitting here today

15   when the world is literally looking at him.  When the

16   community, the media, this court, pretrial, I don't know 30,

17   40 FBI agents, the U.S. Attorney's Office.  You know, he's

18   getting all of this attention.  He knows it, Your Honor.

19   Under the very restrictive conditions that we have proposed

20   Your Honor, I think the Court -- it has to be reasonable, the

21   Court can be very reasonably assured that he is not a risk of

22   flight.  He is not a danger to the community.  It will also,

23   Your Honor, allow him to work with me in a much easier basis

24   to prepare a defense and prepare for trial in this case.

25          But for those reasons, Your Honor, we've offered

1    Your Honor a very reasonable plan, Your Honor.  You say, Your

2    Honor, you've never recalled anybody with robbery or armed

3    robbery ever released before.  This is a 47-year-old man, Your

4    Honor, with strong ties to the community.  He's never been

5    arrested before.  He's never been charged before.  And he's a

6    Baltimore police officer.  And I would argue they talk about

7    him being in a different class, I think he is in a different

8    class, that's right.

9           I think, Your Honor, that the Court can and should

10   release him today under the plan we have proposed with the

11   complete assurance that he will come back to this court for

12   all hearings and that the community is completely safe with

13   him living in his sister's home with an ankle bracelet on,

14   under her supervision, the supervision of all the government

15   resources I've identified, the Court can be assured.

16          And finally, Your Honor, under the section of 3142

17   that I've recited, I believe that that is mandatory in that if

18   the Court can fashion conditions of release that are less

19   restrictive than are required, then the Court is required to.

20   You know, we've come here today --

21          THE COURT:  I'm not in the business of locking up

22   people in circumstances, Mr. Goldman, when I don't otherwise

23   feel that I'm required to.

24          MR. GOLDMAN:  I'm sorry, Your Honor?

25          THE COURT:  That's an offensive suggestion.

1        MR. GOLDMAN:  I'm sorry, I'm just trying to -- I

2   didn't mean to offend the Court.  I'm just trying, Your Honor,

3   to make the point --

4        THE COURT:  The statute has a very coherent logical

5   structure to it.  It's not that different from the new

6   sentencing provisions that we apply.  You impose a sentence

7   that is sufficient but not greater than necessary.  In these

8   circumstances, you don't hold people in custody without having

9   first reached the conclusion, under law, as specified by

10  Congress, that you must, in order to satisfy important public

11  interests.  It's not a matter of a court sitting around before

12  a person's ever even been convicted of an offense and just

13  saying, you know, I think I ought to lock this guy up on some

14  whim.  I hope you're not suggesting that anything other than

15  religious attention to the statute would govern how the Court

16  exercises its discretion.

17       MR. GOLDMAN:  I don't think I argued, Your Honor,

18  the Court would be acting on a whim.  My position is I don't

19  believe the record supports the government's position by clear

20  and convincing evidence.  What we have done is we have

21  fashioned a very specific plan to address the concerns of the

22  government and the Court about risk of flight and danger to

23  the community.  It's very restrictive.  Is it foolproof, Your

24  Honor?  No.  But then, again, being incarcerated is not

25  foolproof in terms of the issues raised by the government as

1    well, as I mentioned earlier, as we've learned from bitter

2    experience.

3            The difference -- this is not a recidivist.  This is

4    a 47-year-old man, never been convicted, with tremendous

5    family ties to the community.  He knows one place, Your Honor.

6    He knows Baltimore.  That's all he knows.  His son is here.

7    This man is not going anywhere.  He's going to stay and fight

8    these charges.  And if the Court is willing to, we think that

9    the Court should allow him to turn him over to his sister as a

10   third-party custodian, to leave that home for only three

11   reasons, to not meet with anyone other than family members,

12   and to work with me to prepare his defense.  I don't believe

13   the government has met the clear and convincing burden.  I

14   understand the Court's position.

15           I guess my last word, Your Honor, you know Mr. Wise

16   said that this is a unique case because he's a police officer.

17   I agree.  That's absolutely right.  He understands the system.

18   Understands the process.  If he doesn't follow the plan that

19   we have proposed to the Court, he understands that the

20   ramifications will come back at him and they'll be all bad.

21   He understands that, Your Honor.  And I think the Court can

22   have -- we're not here to try him today, Your Honor.  We're

23   here to see if there are conditions the Court can fashion,

24   conditions that will reasonably allow for his release.  I

25   think we proposed them quite responsibly, reasonably.  I would

1    ask the Court to adopt them.

2           THE COURT:  Thank you, Mr. Goldman.  I appreciate

3    your energetic advocacy.

4           In accordance with the relevant provision of the

5    Bail Reform Act, which is 18, U.S.C., Section 3145(b), I have

6    now conducted a de novo hearing upon review of the order that

7    Judge Gallagher entered.

8           Before I get into the formal structure of my ruling,

9    let me make this observation:  And that is that any time a

10   court is asked to enter a release order in circumstances where

11   the government has otherwise demonstrated probable cause to

12   believe that the defendant is guilty of offenses that qualify

13   for entry of a detention order, any time that a court is put

14   into that position, the central core issue becomes the

15   trustworthiness of the defendant.  And that's true whether

16   we're talking strictly about flight risk, whether we're

17   talking about fear or risk of obstructing justice, it's even

18   true when we're talking about whether or not the Court

19   concludes or feels that the defendant might be a danger.  It

20   all ultimately turns on this question of whether the Court

21   ultimately trusts the defendant.

22          And Mr. Goldman's point is well taken in that it's

23   not purely a question of trusting his internal code, it's

24   trusting the overall arrangement that Mr. Goldman has

25   skillfully constructed to include third-party residence with

1    the sister and the other sort of structure that would be

2    around him, would the Court ultimately trust that set of

3    conditions to ensure that the defendant shows up to court in

4    the future when he's required to, doesn't engage in behavior

5    that is going to obstruct justice or intimidate witnesses, and

6    doesn't pose a danger to the community.

7            My problem, plain and simple, is that based on the

8    charges that the grand jury has returned, and then the proffer

9    that the government has supplied in support of those charges,

10   that -- and then the additional information that the

11   government has proffered, which I find to be largely unrefuted

12   both in the hearing before Judge Gallagher and now before me,

13   is that I don't trust the defendant.  I don't find him

14   trustworthy.

15           This is an individual who has taken an oath that is

16   of profound significance in our society, this is an individual

17   who's been afforded special powers that are reserved for only

18   a very selected few commissioned law enforcement officers.

19   And for purposes of this hearing only, but based on the

20   information that's been submitted to this Court, I find that

21   he violated that oath.  And if someone is willing and prepared

22   to violate an oath in that context, it strikes the Court as

23   powerful evidence of a lack of basic trustworthiness.  All of

24   the conditions that Mr. Goldman has proposed still ultimately

25   rely on the defendant being trustworthy.  And I don't find

1     that I hold that trust in him.

2          Accordingly, I'll make my more structured findings

3     now.  This is a case in which the government may properly seek

4     detention.  It's also a case in which the Court may consider

5     ordering detention sua sponte on flight risk grounds.  I find

6     secondly, that the defendant is charged under 18, United

7     States Code section 1962(c) and (d).  I find that the maximum

8     term of imprisonment, if the defendant is convicted, is 20

9     years per count.  I find, based on the government's proffer,

10    that there is probable cause to believe that the defendant

11    committed the offenses charged.

12          Different from Judge Gallagher, I find by a

13    preponderance of the evidence, from the information produced

14    at this hearing and from what has been submitted to me on the

15    papers, that there is a serious risk the defendant will not

16    appear as this was not addressed previously by Judge Gallagher

17    I wish to elaborate, at least slightly.  And that is to say

18    that, first of all, the defendant is facing dire consequences

19    if he's convicted in this case.

20          I don't prejudge the outcome of the case, at this

21    point it would be improper to do that.  But it is highly

22    appropriate for the Court to look at the charges that have

23    been brought, particularly there having been found to be

24    probable cause to support them.  These are extremely serious

25    charges.  This, if proven, represents a breach of the public's

1    trust that is extreme, to say the least.  And that's just the

2    public's interest.  What about the actual individual victims

3    of these crimes, as they're described in the indictment.

4          So the defendant is facing severe consequences if

5    found guilty on these charges.  Such consequences can create

6    their own motivations and have to be taken into account when

7    assessing flight risk.  Coupling that with what the Court said

8    a moment ago about trustworthiness, and I am persuaded that

9    there is serious risk that the defendant will not appear.  The

10   totality of the circumstances create that risk.

11         Next I find by clear and convincing evidence from

12   the information produced at the hearing that the defendant

13   poses a risk to the safety of other persons and to the

14   community.  And then I find by clear and convincing evidence

15   that there is no condition, or combination of conditions,

16   including explicitly the proposal submitted by Mr. Goldman,

17   that will reasonably assure the defendant's presence at trial

18   or as otherwise required, or the community's safety.

19         And last of all, I want to note that I agree with

20   the notion that given what has been alleged, and then the

21   proffer in support of the request for the defendant's

22   detention, that I also have concerns and find that there is a

23   substantial and unacceptable risk that the defendant would

24   engage in obstructive behavior.  That is behavior that would

25   be calculated to obstruct justice or potentially to intimidate

1    otherwise cooperative witnesses.  And that provides its own

2    basis for ordering the defendant detained.

3          Ordinarily, the Court supplies an additional written

4    statement of additional reasons for detention.  The Court will

5    simply adopt the written reasons set out by Judge Gallagher as

6    they are entirely consistent with my own sense of these

7    circumstances, with the understanding that where she said

8    additional reasons stated on the record, the additional

9    reasons stated on the record for my purposes are my reasons,

10   not whatever she might have said on the record in her hearing.

11         And so Judge Gallagher's order previously entered,

12   upon review, is affirmed, and the defendant remains committed

13   to the custody of the Attorney General or his designated

14   representative for confinement in a corrections facility,

15   separate, to the extent practical, from persons awaiting or

16   serving sentences or being held in custody pending appeal.

17   The defendant shall be afforded reasonable opportunity for

18   private consultation with defense counsel.  On order of a

19   Court of the United States, or on request of an attorney for

20   the Government, the U.S. Marshals shall deliver the defendant

21   for the purpose of an appearance in connection with a court

22   proceeding.

23         Is there anything else from the government?

24         MR. WISE:  No, Your Honor.  Thank you.

25         THE COURT:  From the defendant?

1              MR. GOLDMAN:  No, Your Honor.

2              THE COURT:  Defendant's remanded to the custody of

3        the Marshal.  Counsel are excused.  Court's in recess.

4              (The proceedings were concluded.)

5

6              I, Christine Asif, RPR, FCRR, do hereby certify that
         the foregoing is a correct transcript from the stenographic
         record of proceedings in the above-entitled matter.

7

8                        _____/s/_____
                          Christine T. Asif
                          Official Court Reporter

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

< Dates >
August 31st 9:16.
March 1 34:12.
may 1961(1) 18:7.
.
.
< 1 >.
1 11:8, 19:9, 20:1,
  23:23, 24:2.
10 30:2.
10. 20:2.
101 1:48.
12 31:9.
1343. 20:6.
15 19:10, 25:9.
18 2:18, 17:17,
  20:6, 38:5,
  40:6.
19 31:9.
1962(c 40:7.
1962. 17:17.
.
.
< 2 >.
2 11:13, 20:1,
  24:5.
2. 19:22.
20 29:14, 30:2,
  40:8.
2016. 9:16.
2017 1:19.
21201 1:49.
24 27:19.
25 23:7.
27 19:22.
.
.
< 3 >.
3 20:2.
30 30:2, 34:16.
3142 3:17, 26:12,
  33:14, 35:16.
3142(c)(b)(1 26:9.
3142(f)(1)(a 3:17.
3142(f)(2)(b 3:18.
3142. 26:12.
3145(b 2:18, 38:5.
32 26:11.
.
.

< 4 >.
4. 19:12.
40 34:17.
42 20:5.
47 25:6, 25:15.
47-year-old 29:11,
  35:3, 37:4.
48 27:19.
4th 1:48.
.
.
< 5 >.
5,000 20:25.
50 23:7.
.
.
< 6 >.
60 2:25.
.
.
< 7 >.
79 9:10, 9:11,
  9:12.
.
.
< 8 >.
8. 9:16.
_____/s/_____
  _____ 43:10.
.
.
< A >.
abide 5:20, 7:5,
  7:20.
ability 33:22.
able 22:20, 26:20,
  33:15.
above-entitled
  43:8.
absent 22:10.
Absolutely 5:14,
  37:17.
abundance 17:6.
access 12:22,
  33:15.
accident 9:23.
accordance 38:4.
Accordingly 40:2.
account 32:9,
  41:6.

accredits 5:10.
accurate 5:21.
accusation 20:9.
accused 31:14,
  31:20.
Act 18:8, 19:23,
  19:24, 38:5.
acting 36:18.
action 32:25.
actions 15:24,
  29:2.
actively 30:3.
activities 19:8,
  26:6.
activity 18:8,
  18:24, 21:9,
  21:14, 21:21,
  31:23.
actors 5:4, 7:16,
  14:8.
acts 11:6, 11:16,
  19:3, 19:21, 20:1,
  20:2, 20:4,
  20:5.
actual 41:2.
actually 7:24,
  7:25.
addition 26:9.
additional 39:10,
  42:3, 42:4,
  42:8.
address 25:5,
  36:21.
addressed 40:16.
adequately 24:14.
admit 31:10.
adopt 38:1, 42:5.
advocacy 38:3.
affected 18:24.
affirmed 42:12.
afforded 39:17,
  42:17.
afternoon 2:2, 2:8,
  2:11, 2:15, 2:16,
  2:17, 3:11,
  14:25.
Agent 1:35, 2:6,
  30:1, 30:6.
agents 30:3,
  34:17.

ago 41:8.
agree 4:13, 32:11,
   37:17, 41:19.
Agreed 4:7.
agreeing 24:9.
agrees 26:18.
ahead 6:8, 16:10.
alarm 27:16.
allegation 17:21.
allegations 15:23,
   16:5, 16:25,
   21:11, 25:14,
   27:1, 28:19,
   29:13, 33:8,
   34:13.
allege 20:5, 24:6.
alleged 17:24,
   19:14, 19:16,
   19:19, 20:3, 22:5,
   41:20.
allegedly 21:5,
   22:5.
alleges 19:23,
   24:14.
alleging 17:9.
allow 25:17, 34:23,
   37:9, 37:24.
allowed 27:5.
almost 7:8, 21:17,
   32:10.
alone 10:11,
   31:19.
already 33:2,
   34:3.
America 1:5, 2:7.
among 10:11,
   23:12.
amount 26:5, 32:5.
amounts 11:2.
amply 24:24.
ankle 27:13, 27:16,
   32:1, 35:13.
Anne 8:7.
answer 6:5, 20:23,
   34:5.
anybody 35:2.
anything. 12:18.
apparently 31:21.
appeal 42:16.
appear 26:21, 40:16,

41:9.
appearance 25:17,
   42:21.
apply 36:6.
appreciate 38:2.
approach 28:17.
appropriate 40:22.
approved 25:12.
area 25:7, 27:23.
arguably 22:14.
argue 17:14, 29:8,
   35:6.
argued 36:17.
argument 14:22,
   14:23, 17:23,
   22:16, 33:13,
   33:14.
armed 31:14, 35:2.
around 36:11,
   39:2.
arrangement 38:24.
arrest 7:25, 8:11,
   10:23, 34:14.
arrested 8:5, 34:12,
   35:5.
arrests 33:18.
Article 19:17.
articulates 18:21.
Arundel 8:7.
Asif 1:46, 43:6,
   43:11.
aspect 20:9.
assessing 41:7.
assistant 12:20.
associated 12:8.
associates 10:25.
association 21:12.
assume 4:13,
   26:18.
assurance 27:20,
   35:11.
assure 7:2, 14:18,
   26:20, 41:17.
assured 34:21,
   35:15.
attack 20:7.
attempt 3:20, 3:21,
   13:6.
attendance 9:22,
   20:4.

attention 18:5,
   27:7, 30:24,
   32:25, 34:18,
   36:15.
Attorney 12:21,
   30:8, 32:4, 34:17,
   42:13, 42:19.
attorneys 5:4.
audience 14:12.
August 9:25.
AUSA 1:25, 1:26.
authority 6:2,
   6:8.
available 11:18,
   11:21, 14:2.
awaiting 42:15.
aware 28:5.
.
.
< B >.
back 6:1, 33:1,
   33:4, 34:2, 35:11,
   37:20.
background 15:15,
   25:6.
bad 28:20, 28:23,
   37:20.
Bail 3:2, 38:5.
Baltimore 1:20,
   1:49, 5:3, 13:17,
   14:12, 18:16,
   18:17, 18:22,
   18:25, 21:24,
   23:15, 24:3, 35:6,
   37:6.
banks 31:18.
based 6:3, 39:7,
   39:19, 40:9.
basic 3:25, 16:2,
   23:2, 39:23.
basically 15:7,
   15:23, 31:5.
basis 3:3, 6:19,
   31:10, 34:23,
   42:2.
battle 14:4.
became 5:5.
becomes 38:14.
begin 15:1, 15:8,
   20:5.

behalf 2:12.
behavior 39:4,
   41:24.
believe 4:6, 5:24,
   6:5, 6:18, 6:19,
   6:20, 23:19,
   23:20, 25:11,
   28:17, 35:17,
   36:19, 37:12,
   38:12, 40:10.
belongs 15:10.
best 20:24.
better 8:9.
beyond 15:7.
bit 15:15, 21:6.
bitter 28:25,
   37:1.
blush 23:2.
body 10:1.
BPD 10:1, 10:16,
   12:20.
bracelet 27:14,
   27:17, 32:1,
   35:13.
breach 40:25.
breaks 23:12.
bribery 18:3.
bring 30:9, 34:2.
brother 25:9.
brought 12:6, 26:1,
   33:1, 33:4, 34:10,
   40:23.
buddy 23:16.
burden 37:13.
business 19:1,
   20:24, 21:2,
   35:21.
.
.
< C >.
c)(1 26:14.
c)(1)(b)(i 26:15,
   26:17.
c)(b 26:13.
calculated 41:25.
call 2:3, 10:22.
camera 10:1, 10:17,
   11:21.
capital 26:14.
car 9:18.

cars 9:18.
cases 5:5, 11:24,
   14:15, 17:25,
   23:7, 23:8,
   28:25.
catch 26:11.
category 6:13.
cause 5:6, 26:2,
   31:20, 38:11,
   40:10, 40:24.
causing 8:9.
caution 17:6.
CCTV 10:17.
central 6:24,
   38:14.
certain 2:25, 23:8,
   23:9.
Certainly 17:15,
   24:19, 32:12.
certified 9:3.
certify 43:6.
challenged 17:3.
challenging 13:10,
   16:13, 17:5,
   34:3.
chance 13:25.
chances 32:24.
changed 34:14.
charge 15:19, 20:15,
   24:2, 24:3,
   24:15.
chargeable 18:10.
charged 3:17, 4:20,
   7:12, 8:14, 11:6,
   11:8, 11:13, 18:9,
   18:12, 18:15,
   21:15, 22:24,
   25:15, 35:5, 40:6,
   40:11.
charges 15:7, 16:19,
   23:23, 23:24,
   24:4, 25:25, 26:3,
   27:25, 37:8, 39:8,
   39:9, 40:22,
   40:25, 41:5.
charging 5:6, 5:7,
   18:19, 23:3.
chose 9:19.
Christine 1:46,
   43:6, 43:11.

circumstances 8:17,
   35:22, 36:8,
   38:10, 41:10,
   42:7.
cite 10:9.
City 5:3, 10:17.
civil 13:19.
civilians 11:12,
   11:14, 11:23.
claim 7:17, 19:6.
claiming 28:23.
claims 30:10.
class 35:7, 35:8.
classic 26:23.
Clear 3:4, 4:3, 8:5,
   25:20, 27:8,
   36:19, 37:13,
   41:11, 41:14.
clearly 18:21.
clerk 16:9.
client 17:3, 22:24,
   25:15, 25:21,
   26:6, 27:3, 28:13,
   29:16, 29:22,
   30:10, 30:13,
   32:13, 33:14.
closing 33:13.
co-defendants 4:24,
   7:24, 8:2, 9:13,
   14:10, 23:7.
coached 5:9.
Code 2:18, 38:23,
   40:7.
coherent 36:4.
coin 29:9.
coincidence 21:17.
colleague 2:20.
combination 41:15.
combinations
   19:23.
comes 18:4, 28:11,
   32:6.
coming 13:16,
   21:25.
commerce 24:20.
commissioned
   39:18.
committed 10:11,
   15:4, 23:17,
   40:11, 42:12.

committing 3:18,
   20:25.
communication
   12:15.
communications 8:5,
   10:15, 12:24.
community 3:4, 4:22,
   7:3, 7:6, 12:3,
   14:18, 25:5,
   25:18, 26:23,
   28:19, 34:16,
   34:22, 35:4,
   35:12, 36:23,
   37:5, 39:6, 41:14,
   41:18.
compare 23:6.
complaint 33:8.
complete 35:11.
completely 21:22,
   22:10, 35:12.
comply 28:9,
   28:10.
conceal 4:25, 5:8.
concede 29:5.
concerns 36:21,
   41:22.
concluded. 43:4.
concludes 38:19.
conclusion 5:11,
   36:9.
condition 26:19,
   41:15.
conditions 5:21,
   7:2, 7:5, 7:20,
   13:23, 14:17,
   28:6, 34:19,
   35:18, 37:23,
   37:24, 39:3,
   39:24, 41:15.
conduct 7:18, 7:23,
   8:18, 10:7, 11:11,
   13:16, 13:20,
   13:25, 14:8,
   14:11, 18:24,
   19:2, 21:5, 22:6,
   23:1, 23:24, 24:6,
   24:21, 29:1,
   30:12.
conducted 38:6.
conducting 31:10.

conducts 33:7.
confident 31:13.
confidential
   12:14.
confinement 42:14.
confused 9:9.
Congress 36:10.
connection 20:23,
   42:21.
consequences 40:18,
   41:4, 41:5.
consider 10:13,
   40:4.
consistent 11:5,
   42:6.
conspiracy 11:9,
   11:17, 12:11,
   12:15, 12:19,
   20:1, 20:22,
   23:10, 23:24,
   24:2, 24:6, 24:9,
   24:15.
conspiratorial
   19:8.
constitute 17:1.
constructed 38:25.
consultation
   42:18.
contemporaneous
   10:22.
contend 32:12.
content 24:18,
   24:25.
contention 21:21.
contentions 22:22.
contest 27:25.
contested 18:17.
context 39:22.
continue 4:16,
   6:23.
continues 30:5.
contraband 22:13.
convened 2:17.
conversation
   29:22.
conversations
   10:24.
convicted 29:12,
   36:12, 37:4, 40:8,
   40:19.

convincing 4:3,
   25:20, 36:20,
   37:13, 41:11,
   41:14.
cooperative 42:1.
copy 8:20, 8:23.
core 20:15, 38:14.
corporation 20:13,
   20:24.
correct 20:11,
   20:16, 43:7.
correctional 22:12,
   22:18, 22:21.
corrections 42:14.
corroborated 10:21,
   11:3.
Counsel 2:5, 2:19,
   42:18, 43:3.
Count 11:8, 11:13,
   19:9, 19:21,
   19:22, 23:23,
   24:2, 24:5, 24:25,
   40:9.
counter 13:13.
counts 24:10.
County 8:7.
couple 9:1.
coupled 26:3.
Coupling 41:7.
course 17:2.
courtroom 31:16.
cover 9:5.
coverage 27:2.
covers 24:6.
crafted 13:23.
crash 9:14, 9:19.
create 41:5,
   41:10.
created 5:7.
credible 24:15.
crime 17:10, 25:16,
   29:12.
crimes 3:18, 7:12,
   10:11, 15:4,
   16:20, 22:23,
   41:3.
Criminal 1:9, 2:7,
   5:4, 7:10, 7:15,
   7:16, 8:17, 14:5,
   14:7, 14:9, 15:24,

19:17, 20:16,
21:2, 21:9, 21:21,
22:6, 23:1, 24:9,
29:1, 31:23.
cross 23:11.
curious 5:23.
custodian 25:12,
31:1, 37:10.
custody 25:22,
26:17, 26:23,
27:3, 36:8, 42:13,
42:16, 43:2.
cut 32:14.
.
.
< D >.
daily 31:10.
danger 3:3, 12:3,
25:5, 25:18,
26:22, 28:19,
34:22, 36:22,
38:19, 39:6.
dangerousness 4:1,
6:9.
Daniel 2:7, 2:13,
30:18, 31:6.
DANIEL THOMAS HERSL
1:10.
day 8:1, 8:8, 8:9,
8:12, 10:3,
31:2.
de 3:6, 38:6.
dead 12:17.
deal 21:16.
decides 22:12.
defendants 4:21,
5:7, 7:9, 8:3,
9:18, 10:11, 11:1,
11:8, 11:17, 12:4,
12:7, 12:23,
13:12, 13:24,
15:24, 18:23,
19:7, 23:12.
defense 11:19, 31:7,
34:24, 37:12,
42:18.
defines 18:8.
deliver 42:20.
demonstrated 24:24,
38:11.

Department 5:3,
13:17, 13:18,
13:20, 14:1,
14:12, 18:16,
18:18, 18:20,
18:23, 18:25,
20:14, 21:13,
21:24.
departments 14:13.
depending 19:24.
derail 32:16.
Derek 1:26, 2:5.
describe 8:24, 9:4,
9:12, 12:12.
described 9:24,
20:8, 41:3.
description 22:14.
designated 26:18,
26:20, 42:13.
despite 9:25.
detail 23:11.
detain 6:2.
detained 3:2, 4:1,
12:24, 14:19,
42:2.
detention 2:9, 2:20,
2:25, 3:3, 3:16,
4:21, 5:16, 5:24,
24:12, 28:11,
38:13, 40:4, 40:5,
41:22, 42:4.
determination 6:14,
7:1.
determinations
5:6.
determined 30:10.
detour 22:17.
device 9:17,
10:16.
devote 30:5.
difference 24:10,
29:6, 29:7, 31:24,
37:3.
Different 3:8,
23:16, 28:18,
29:8, 31:17, 35:7,
36:5, 40:12.
difficult 5:19,
33:5.
dire 40:18.

direct 13:7, 29:2.
directing 16:9.
discretion 36:16.
discuss 8:19.
dishonest 32:8.
DISTRICT 1:1, 1:2.
division 13:18.
Document 9:10,
9:12.
documents 5:6.
doing 10:4, 13:8,
15:17, 22:20.
done 36:20.
door 30:15.
down 28:16, 31:6,
32:6.
dubious 16:6.
due 25:18, 28:16.
during 23:21.
duties 22:7, 22:8.
duty 9:23.
.
.
< E >.
earlier 37:1.
earned 11:24.
easier 34:23.
effect 8:11.
effectively 13:8,
14:2, 31:23.
either 3:7, 3:9,
6:21, 17:4.
elaborate 40:17.
electronic 27:4.
element 24:9.
elements 16:2,
16:13, 24:14,
24:22.
employees 15:6,
16:17.
encountered 12:1.
end 15:18.
energetic 38:3.
enforce 7:13.
enforcement 8:11,
10:20, 11:4, 11:5,
13:11, 13:13,
39:18.
engage 39:4,
41:24.

engaged 4:21, 4:24,
  10:7, 13:25,
  14:11, 18:23,
  19:24, 21:4, 22:5,
  22:6.
engineer 7:24.
engineered 7:25.
enormous 16:6.
ensure 39:3.
enter 38:10.
entered 2:20, 38:7,
  42:11.
enterprise 17:1,
  18:15, 18:22,
  19:1, 20:9, 20:14,
  20:19, 20:21,
  21:3, 21:6, 21:7,
  21:10, 21:19,
  21:24, 23:1,
  23:13, 23:22.
enterprises 29:2.
entertain 3:13.
entire 18:20, 27:23,
  30:7.
entirely 20:16,
  42:6.
entity 20:16,
  21:8.
entry 38:13.
episode 9:4, 9:24.
episodes 3:23,
  10:17, 10:18,
  10:21, 11:13,
  11:22, 13:2.
Erica 1:35, 2:6.
Esquire 1:31.
essentially 15:22,
  31:15.
evading 13:14.
evaluated 13:22.
evidence 3:11, 4:25,
  5:25, 10:13,
  14:21, 25:20,
  36:20, 39:23,
  40:13, 41:11,
  41:14.
evidenced 13:12.
example 20:12,
  20:13.
examples 7:22, 9:2,

10:6, 10:9,
  33:8.
exclusively 18:1.
excused 43:3.
execution 19:7.
exercises 36:16.
exist 18:18.
exists 6:17,
  12:22.
experience 17:25,
  29:1, 29:10,
  37:2.
explicitly 41:16.
expose 8:17.
exposure 32:13.
extent 13:5, 18:5,
  42:15.
extortion 8:25,
  15:5, 16:17,
  18:10, 18:13,
  19:3, 19:19,
  22:6.
extortions 4:25.
extra 8:20.
extreme 41:1.
extremely 40:24.
.
.
< F >.
f)(2 6:21.
facility 22:13,
  42:14.
facing 13:6, 32:7,
  40:18, 41:4.
fact 3:1, 7:19, 9:5,
  10:1, 15:6, 16:14,
  22:24, 24:18.
factor 10:12.
facts 4:23.
factual 18:17.
fair 23:6.
fairly 14:15,
  14:16.
fall 6:12.
false 5:2, 5:7, 9:3,
  10:10, 21:1,
  23:17.
familiar 16:1.
family 10:25, 25:8,
  27:23, 31:4,

32:20, 37:5,
  37:11.
far 14:1, 16:5,
  17:23, 33:24.
fashion 35:18,
  37:23.
fashioned 36:21.
faults 7:15.
favor 32:14.
FBI 1:35, 2:6,
  10:14, 30:1, 30:2,
  30:6, 30:7, 32:4,
  34:17.
FCRR 1:46, 43:6.
fear 8:16, 12:8,
  38:17.
fearful 12:7.
Federal 1:47, 8:14,
  15:10, 15:13,
  16:12, 17:10,
  17:17, 17:19,
  24:24, 31:16,
  31:18.
feel 35:23.
feels 38:19.
few 39:18.
fight 32:21, 37:7.
filed 2:19, 5:2,
  16:3.
final 24:20.
finally 35:16.
find 39:11, 39:13,
  39:20, 39:25,
  40:5, 40:7, 40:9,
  40:12, 41:11,
  41:14, 41:22.
findings 2:25,
  40:2.
finger 29:19,
  32:7.
First 6:6, 6:13,
  14:25, 23:2, 25:5,
  29:10, 30:14,
  30:16, 30:17,
  32:17, 33:2, 34:8,
  36:9, 40:18.
flee 27:21.
flexibility 33:16.
flight 5:16, 5:24,
  6:3, 6:13, 25:4,

28:4, 32:14,
32:18, 34:22,
36:22, 38:16,
40:5, 41:7.
Floor 1:48.
follow 3:5, 37:18.
foolproof 36:23,
36:25.
footage 10:17,
10:18.
Force 23:25, 24:1,
29:24.
forces 30:4.
foregoing 43:7.
formal 38:8.
forming 24:9.
forward 7:20,
12:6.
found 8:6, 26:1,
31:20, 40:23,
41:5.
frankly 12:23.
fraud 8:25, 9:1,
19:3, 19:14.
free 28:3.
freedom 33:16.
frequently 17:25,
26:24.
Friday 2:22.
frolic 22:17.
front 6:20, 8:8.
full 16:24.
function 3:6.
functioning 21:6,
21:22, 21:23,
22:8, 22:18.
fundamental 15:18,
22:1.
future 39:4.
.
.
< G >.
Gallagher 2:21,
10:14, 13:1, 13:9,
28:4, 38:7, 39:12,
40:12, 40:16,
42:5, 42:11.
garden 31:17.
gave 11:5, 33:7,
33:13.

General 24:23,
42:13.
gentleman 34:13.
getting 32:25,
34:18.
Give 7:4, 15:2,
19:11.
given 41:20.
glad 30:1.
Goldman 2:10, 2:12,
4:7, 4:14, 14:20,
20:7, 25:1, 31:8,
35:22, 38:2,
38:22, 38:24,
39:24, 41:16.
Gondo 8:16.
gotten 17:18.
govern 36:15.
grand 17:18, 20:8,
21:21, 26:1,
31:20, 39:8.
great 32:12,
33:13.
greater 13:6,
36:7.
grounds 4:2, 4:5,
5:16, 5:24, 6:3,
40:5.
group 15:25,
16:25.
GTTF 11:9, 11:11.
guess 26:15,
37:15.
guests 28:22.
guilty 27:25, 38:12,
41:5.
Gun 23:25, 24:1.
guy 11:20, 36:13.
guys 23:14.
.
.
< H >.
hand 8:21, 20:14.
handful 24:3.
handling 33:18.
happen 21:17, 24:3,
30:14, 31:15.
happened 11:25,
31:16.
hard 8:23.

harm 30:11.
headed 3:9.
hear 14:24.
heard 17:22.
hearing 5:11, 15:8,
24:13, 29:19,
33:14, 38:6,
39:12, 39:19,
40:14, 41:12,
42:10.
hearings 31:12,
35:12.
heart 5:18.
held 32:9, 42:16.
hereby 43:6.
Hersl 2:7, 2:12,
2:13, 8:4, 9:25,
11:11, 11:22,
15:4, 15:15,
19:25, 25:6,
30:18, 31:6.
hierarchy 6:17.
high 9:13, 9:19,
32:3, 32:11.
higher 14:3,
14:17.
highlight 7:22.
highlighted 13:2.
highly 32:15,
40:21.
Hines 1:26, 2:5.
hold 36:8, 40:1.
home 25:23, 27:4,
27:5, 27:6, 32:1,
33:20, 35:13,
37:10.
Honorable 1:18.
hope 36:14.
horned 15:13.
hours 27:19.
house 30:24, 31:2,
31:6.
.
.
< I >.
idea 8:4, 30:19.
identified 19:4,
35:15.
imagine 17:3.
immediately 32:10.

impacts 24:19.
important 15:8,
  36:10.
impose 36:6.
imprisonment 18:11,
  18:13, 40:8.
improper 15:24,
  40:21.
in. 12:10.
inaccurate 15:25.
incarcerated 28:21,
  36:24.
incident 5:2,
  10:10.
incidental 31:22.
include 38:25.
including 11:2,
  12:13, 13:13,
  41:16.
increase 23:10.
increases 23:12.
independent 21:15.
indictment 16:7,
  17:9, 17:13,
  18:21, 19:4, 19:6,
  21:12, 21:20,
  22:4, 22:10,
  23:14, 24:14,
  24:19, 33:10,
  33:11, 33:22,
  34:14, 41:3.
indiscriminate
  21:1.
individual 5:7,
  15:23, 39:15,
  39:16, 41:2.
individually 19:25,
  23:16.
individuals 21:13,
  22:5.
infiltrated 19:2.
informant 12:14.
information 5:12,
  5:21, 6:3, 9:3,
  12:6, 12:20,
  12:22, 14:14,
  39:10, 39:20,
  40:13, 41:12.
initial 24:16.
initially 16:23.

injury 3:20, 3:21.
innocence 29:14.
installed 10:15.
instance 4:23,
  34:9.
Instead 7:14, 9:20,
  10:2.
integration 23:1.
integrity 7:14.
intend 10:2.
intended 10:2,
  11:24.
intense 32:5,
  34:6.
inter 15:22.
interacted 11:23.
interacting 14:8.
interactions 7:10.
intercepted 8:5,
  10:15, 12:15.
interest 41:2.
interests 36:11.
internal 13:17,
  38:23.
interstate 24:19.
interviewed 10:18,
  11:4, 11:5.
interwoven 21:22.
intimidate 3:21,
  13:7, 39:5,
  41:25.
intimidation
  33:24.
investigation 12:21,
  13:12, 13:19.
investigations
  13:18.
investigators
  11:10.
invoke 26:24.
invokes 4:10.
involve 13:3.
involved 9:13, 9:19,
  10:21, 26:6,
  31:22.
involves 8:24,
  30:20.
involving 18:9.
issue 6:24, 15:9,
  15:11, 16:11,

  25:1, 28:17,
  38:14.
issued 10:1.
issues 25:18,
  36:25.
itself 20:15.
.
.
.
< J >.
jail 10:22, 12:25,
  23:6, 28:24,
  28:25, 29:2,
  29:3.
James K. Bredar
  1:18.
Jane 25:10, 25:22,
  27:4.
Jenkins 24:1.
Jensen 1:35, 2:6.
JKB-17-0106 1:9.
JKB-17-106 2:8.
job 22:14.
joined 11:9, 11:11,
  24:8.
Judge 2:21, 3:7,
  8:8, 10:14, 13:1,
  13:9, 28:3, 31:9,
  31:19, 31:21,
  38:7, 39:12,
  40:12, 40:16,
  42:5, 42:11.
judges 5:4, 14:13,
  26:24.
judicial 26:21,
  31:8.
jurisdiction 15:17,
  15:18, 16:5, 17:8,
  24:12, 24:17,
  24:21, 24:24.
juror 3:22.
jury 17:18, 20:8,
  21:21, 26:1,
  31:20, 39:8.
Justice 3:20, 4:24,
  5:5, 7:10, 7:15,
  7:16, 13:18, 14:6,
  14:7, 14:9, 38:17,
  39:5, 41:25.
.
.

< K >.
keep 10:2.
kernel 28:14.
killed 12:13.
kind 12:21.
kinds 29:1, 30:4.
Kingsville 25:11.
knock 30:15.
knowledge 13:13,
    29:9, 29:18.
known 12:16,
    21:24.
knows 29:14, 29:16,
    29:24, 30:13,
    32:9, 32:24, 33:2,
    33:3, 33:25, 34:4,
    34:5, 34:10,
    34:18, 37:5,
    37:6.
.
.
< L >.
lack 39:23.
lacks 17:8.
language 20:19.
largely 39:11.
larger 21:8.
last 2:21, 2:23,
    13:25, 29:18,
    37:15, 41:19.
later 11:3, 17:15.
law 3:4, 7:13, 8:10,
    10:20, 11:4, 11:5,
    13:11, 13:13,
    15:12, 16:16,
    16:18, 16:20,
    17:16, 18:1, 18:3,
    18:10, 20:2,
    22:19, 23:20,
    36:9, 39:18.
lawfully 11:24.
leads 28:11.
learned 11:10,
    37:1.
least 5:25, 11:18,
    40:17, 41:1.
leave 27:5, 30:24,
    37:10.
leaving 27:10,
    27:12.

legal 17:23.
legitimate 19:1,
    20:12.
lengthy 7:23,
    19:5.
Leo 2:4.
Leo J. Wise 1:25.
less 10:8, 14:1,
    16:4, 30:20,
    35:18.
letting 27:9,
    31:14.
level 14:14, 23:8,
    23:9, 30:23.
liberty 28:11.
lie 9:21.
life 27:23, 32:19.
life-long 27:22.
lift 32:7.
light 7:18, 13:16,
    27:1, 28:13.
limit 31:3.
linked 20:22.
listening 9:17,
    10:15, 28:15.
literally 31:2,
    34:15.
litigated 15:11.
litigation 17:15,
    23:18, 23:21.
little 15:14, 17:21,
    25:6, 29:20.
live 3:11, 14:21,
    25:23, 27:3, 31:5,
    32:20.
lived 25:7, 32:19.
lives 25:11.
living 33:20,
    35:13.
local 15:5, 16:17.
location 13:4.
lock 36:13.
locked 10:2.
locking 35:21.
logical 36:4.
Lombard 1:48.
long 27:15.
longer 22:18.
look 9:22, 14:9,
    22:12, 40:22.

looked 11:10.
looking 15:22,
    34:15.
loving 25:8.
.
.
< M >.
Magistrate 2:21,
    3:7, 10:14, 13:1,
    13:9, 13:21,
    26:24, 28:3, 31:9,
    31:19, 31:21.
man 29:11, 29:20,
    35:3, 37:4,
    37:7.
mandatory 35:17.
manipulating 8:10.
March 7th 1:19.
Marshal 43:3.
Marshals 42:20.
Maryland 1:2, 1:20,
    1:49, 16:16, 18:3,
    18:12, 19:17,
    25:11, 32:20.
material 15:8.
matter 18:17, 24:13,
    33:3, 34:7, 36:11,
    43:8.
matters 7:1.
maximum 40:7.
mean 9:7, 22:13,
    33:19, 36:2.
means 21:4.
media 27:2, 34:16.
medical 27:7.
meet 4:2, 24:21,
    24:23, 37:11.
meetings 23:11.
meets 16:13.
Members 10:25,
    12:11, 12:15,
    12:19, 23:15,
    23:24, 23:25,
    24:4, 24:7, 25:9,
    37:11.
memory 31:13.
mentioned 28:24,
    37:1.
merit 15:12.
met 37:13.

mind 3:4, 18:4,
  25:13.
minute 22:17,
  34:1.
mirror 31:11.
misses 27:24.
mob 19:2.
moment 41:8.
money 5:8, 11:2,
  11:20, 11:24.
monitor 13:4,
  14:2.
monitored 12:25,
  13:15, 28:21.
monitoring 13:4,
  27:4.
moot 6:16.
motion 2:9, 2:19,
  6:3, 6:9, 6:14,
  6:21, 7:17, 7:22,
  8:20, 9:4, 9:6.
motivated 32:15.
motivations 41:6.
move 6:8, 6:15,
  6:19, 23:5,
  25:1.
moved 6:16.
moves 3:16.
MR. WISE 2:4, 3:12,
  3:15, 4:3, 4:6,
  4:11, 4:18, 5:14,
  5:17, 6:5, 6:11,
  6:18, 6:24, 8:24,
  9:8, 9:10, 9:12,
  9:16, 18:2, 18:7,
  18:21, 19:9,
  19:12, 19:15,
  19:18, 19:20,
  23:23, 42:24.
multiple 7:10.
muster 24:16.
.
.
< N >.
namely 15:4.
narcotics 5:9.
nature 12:2,
  17:22.
necessary 22:25,
  36:7.

need 15:18, 33:25.
new 36:5.
news 27:2.
Next 8:1, 8:8, 8:12,
  41:11.
nexus 21:8.
night 8:6.
No. 1:9, 2:7, 2:25,
  9:10, 9:12,
  36:24.
normal 22:8.
NORTHERN 1:2.
note 41:19.
noting 15:1.
notion 32:14, 32:18,
  41:20.
novo 3:6, 38:6.
number 7:22, 13:2,
  23:9.
numbers 23:10.
.
.
< O >.
oath 7:13, 39:15,
  39:21, 39:22.
observation 38:9.
obstruct 3:19, 3:20,
  28:24, 39:5,
  41:25.
obstructing 38:17.
obstruction 4:5,
  4:24, 6:12, 6:19,
  7:1, 13:2.
obstructive 7:23,
  10:7, 14:11, 26:6,
  30:12, 32:9, 33:7,
  41:24.
obtained 10:16,
  10:19.
obtaining 10:22.
obviously 18:12.
occur 11:17, 12:24,
  30:13.
occurred 10:23,
  21:15, 24:7.
offend 36:2.
offense 18:6,
  36:12.
offenses 38:12,
  40:11.

offensive 35:25.
offer 17:22.
offered 34:25.
offering 31:25.
Office 15:5, 27:7,
  30:7, 30:8, 32:4,
  34:17.
officer 11:14,
  13:11, 16:17,
  22:12, 22:18,
  24:2, 26:21, 27:9,
  29:12, 29:15,
  29:20, 30:23,
  30:25, 31:9, 35:6,
  37:16.
officers 8:11,
  10:16, 10:20,
  12:7, 12:8, 12:20,
  16:1, 16:25,
  21:14, 21:18,
  21:23, 22:9,
  22:22, 22:25,
  24:4, 39:18.
Official 1:47, 18:4,
  43:12.
Okay 4:4, 4:7, 6:23,
  14:24.
old 16:4, 25:7.
once 11:9.
one 3:9, 5:9, 7:23,
  8:1, 9:1, 9:4,
  9:18, 9:24, 10:3,
  18:11, 18:14,
  27:7, 29:19, 30:6,
  37:5.
ones 28:7.
open 21:25.
opening 17:7.
operating 9:18.
opinion 17:22.
opportunity 42:17.
option 26:23.
oral 26:4.
order 2:9, 2:20,
  2:24, 4:22, 4:24,
  7:25, 24:12,
  24:23, 27:7, 32:8,
  36:10, 38:6,
  38:10, 38:13,
  42:11, 42:18.

ordered 3:2, 3:7.
ordering 40:5,
   42:2.
Ordinarily 42:3.
organization 16:3,
   16:14, 17:1,
   18:20, 19:1,
   20:17, 23:11.
organizations
   20:12.
organized 31:23.
others 11:4, 13:7,
   22:24.
otherwise 20:11,
   21:12, 21:25,
   24:22, 35:22,
   38:11, 41:18,
   42:1.
ought 36:13.
outcome 40:20.
outside 22:7, 27:5,
   29:3.
outstanding 8:6.
overall 24:18,
   38:24.
oversight 13:24.
overtime 8:25, 19:3,
   20:4.
own 6:3, 6:8, 6:14,
   24:17, 41:6, 42:1,
   42:6.
.
.
< P >.
Page 9:15, 9:16,
   19:5, 19:11,
   19:12, 19:22,
   20:5.
paper 2:25, 16:15.
papers 15:3, 16:3,
   26:4, 40:15.
paperwork 33:18.
paragraph 19:9.
parenthetically
   15:9, 16:23.
part 5:10, 8:9,
   13:22, 20:1,
   21:23, 31:11.
participants
   20:21.

participated 5:1,
   11:14.
participating 11:9,
   23:9, 33:18.
particular 7:9, 9:4,
   25:10.
particularly
   40:23.
party 25:12, 25:22,
   31:1.
passes 24:15.
passport 32:20.
past 17:18, 18:6,
   25:1.
pattern 18:23.
pay 11:25, 21:2.
peace 29:11.
pending 42:16.
people 12:22, 20:25,
   23:9, 24:3, 27:16,
   28:20, 29:1,
   31:23, 35:22,
   36:8.
per 40:9.
person 8:3, 8:11,
   12:3, 12:16,
   22:19, 26:18,
   26:20, 26:21,
   26:22, 28:6,
   30:15, 30:16,
   30:17, 36:12.
personally 10:9.
persons 41:13,
   42:15.
persuaded 21:25,
   41:8.
Peter 2:11.
Peter Goldman
   1:31.
Peters 8:8.
phone 12:25.
phones 28:21.
physical 27:11,
   28:10.
place 12:1, 17:16,
   34:8, 37:5.
placed 28:7.
places 27:8.
plain 39:7.
Plaintiff 1:7,

1:23.
plan 25:17, 27:1,
   29:21, 31:25,
   33:8, 33:12, 34:6,
   35:1, 35:10,
   36:21, 37:18.
play 30:9.
Please 2:2, 6:23.
pled 27:24.
point 7:11, 28:2,
   28:25, 29:5, 36:3,
   38:22, 40:21.
point. 3:5, 34:10.
pointed 13:1.
Police 5:3, 12:6,
   12:8, 13:17,
   14:12, 18:16,
   18:17, 18:20,
   18:22, 18:25,
   20:14, 21:13,
   21:14, 21:17,
   21:22, 21:24,
   22:8, 22:25,
   23:15, 24:3,
   29:15, 30:22,
   35:6, 37:16.
pose 39:6.
poses 3:3, 41:13.
position 12:9,
   22:19, 26:3, 28:8,
   36:18, 36:19,
   37:14, 38:14.
possible 22:23.
post 34:14.
postponed 8:9.
potential 25:12.
potentially 28:23,
   29:4, 41:25.
powerful 29:24,
   39:23.
powers 39:17.
practical 30:10,
   33:3, 34:7,
   42:15.
pre 34:12.
precisely 13:11,
   32:3, 32:24.
predicate 18:4.
predicates 16:21,
   17:23, 17:25,

18:12, 19:22, 20:3.
predict 14:5, 14:6, 14:7.
prefer 20:18.
prejudge 40:20.
prejudicing 17:14.
prepare 31:7, 34:24, 37:12.
prepared 15:21, 16:23, 39:21.
preponderance 40:13.
preposterous 30:22.
prerequisites 23:3.
presence 41:17.
Present 1:35, 2:12, 25:2.
presentation 17:7, 26:5.
presentations 7:16.
presented 6:4, 28:13.
presumption 4:11, 29:13.
presumptions 4:9.
Pretrial 5:19, 7:3, 7:6, 13:10, 14:1, 14:13, 27:8, 27:9, 29:20, 30:7, 30:25, 32:4, 34:16.
prevent 8:1, 8:12, 13:14, 13:15.
previous 11:12.
previously 40:16, 42:11.
primary 20:7.
Print 16:7.
prior 24:8.
prison 20:13, 22:12, 22:21.
prisoner 8:7.
private 10:24, 20:12, 42:18.
probable 5:6, 26:2, 31:20, 38:11,

40:10, 40:24.
probably 27:19, 30:16.
problem 15:19, 33:12, 34:2, 39:7.
problems 21:18.
procedures 3:5.
proceed 3:10, 3:14, 14:21.
proceeding 3:6, 31:10, 42:22.
Proceedings 1:17, 43:4, 43:8.
proceeds 17:2.
process 37:18.
produced 40:13, 41:12.
product 17:24.
Proffer 3:11, 3:12, 3:13, 5:11, 5:25, 14:21, 14:23, 39:8, 40:9, 41:21.
proffered 10:13, 13:9, 13:21, 26:4, 39:11.
profile 32:3.
profound 39:16.
prominently 18:4.
promise 28:9.
proof 26:5.
proper 17:19.
properly 40:3.
property 5:8.
proposal 41:16.
proposed 28:7, 34:19, 35:10, 37:19, 37:25, 39:24.
proposing 25:21, 26:10, 34:6.
proposition 6:1, 6:9.
prosecution 32:16.
prosecutors 14:13.
prospective 3:22.
protect 4:22, 7:6.
proven 25:19, 25:25, 40:25.

provide 5:21.
provided 9:2, 10:19.
provides 42:1.
provision 38:4.
provisions 3:16, 36:6.
public 18:3, 36:10, 40:25, 41:2.
punishable 18:10.
purely 38:23.
purpose 42:21.
purposes 21:9, 21:19, 24:11, 24:13, 39:19, 42:9.
pursuant 2:17.
put 10:3, 15:21, 16:23, 29:18, 30:3, 31:1, 38:13.
.
.
< Q >.
qualify 38:12.
quarrel 5:22.
question 4:9, 6:1, 6:6, 15:17, 20:23, 24:17, 28:12, 29:17, 29:18, 34:5, 38:20, 38:23.
questions 7:4, 16:24, 23:5.
quite 16:6, 37:25.
quote 3:19, 12:17.
.
.
< R >.
racketeering 8:14, 11:6, 11:16, 15:19, 18:8, 18:24, 19:21, 19:23, 19:24, 19:25, 20:2, 20:4, 20:5, 20:15, 24:6.
raise 11:16.
raised 24:16, 25:4, 36:25.

raises 6:24.
raising 15:17.
ramifications
    37:20.
rather 24:6.
reached 36:9.
reaction 23:4,
    28:5.
read 21:20.
reads 22:4.
real 29:22.
really 7:8, 14:15,
    15:3, 21:17,
    32:5.
realm 29:17.
rear-view 31:11.
reason 7:19.
reasonable 13:23,
    26:20, 34:20,
    35:1, 42:17.
reasonably 7:2,
    14:17, 34:21,
    37:24, 37:25,
    41:17.
reasons 9:1, 25:20,
    27:6, 34:25,
    37:11, 42:4, 42:5,
    42:8, 42:9.
recalled 35:2.
receipts 5:8.
received 12:19.
recent 18:6, 23:6.
recess 43:3.
recidivist 37:3.
recited 35:17.
recognize 25:14.
reconsideration
    3:6.
record 36:19, 42:8,
    42:9, 42:10,
    43:8.
recordings 10:22.
referencing 23:12.
referring 9:6.
reflect 5:12.
Reform 38:5.
regard 11:7.
regardless 14:11,
    14:14.
reject 32:18.

related 6:1.
relates 28:18.
relation 3:1.
relayed 10:25.
release 26:19,
    31:15, 32:8,
    35:10, 35:18,
    37:24, 38:10.
released 12:23,
    28:6, 35:3.
relevant 9:1,
    38:4.
relied 5:3.
religious 36:15.
rely 39:25.
remain 26:17.
remains 12:24,
    16:12, 31:25,
    42:12.
remanded 43:2.
remember 29:11,
    31:14.
rent 11:25.
repeated 19:22.
repeatedly 7:15.
report 26:19.
Reporter 1:47,
    43:12.
reports 5:2, 10:10,
    33:17.
representative
    42:14.
represents 30:2,
    40:25.
request 3:1, 41:21,
    42:19.
required 26:21,
    35:19, 35:23,
    39:4, 41:18.
requirements
    24:23.
requires 6:9.
reserved 39:17.
residence 38:25.
resident 27:23.
resources 14:2,
    30:4, 32:3,
    35:15.
respect 25:19,
    28:16.

respectfully
    32:18.
respects 22:23.
respond 9:20,
    27:16.
responded 9:20.
response 8:19, 9:7,
    12:12.
responses 7:4.
responsibly 37:25.
restraint 27:12.
restriction 28:10.
restrictive 28:6,
    29:21, 30:21,
    31:25, 34:19,
    35:19, 36:23.
retains 6:2, 6:7.
retaliated 12:5.
returned 39:8.
returning 27:10.
review 2:9, 2:20,
    24:12, 38:6,
    42:12.
reviewed 33:21.
RICO 15:7, 15:10,
    16:2, 16:13,
    16:14, 16:15,
    16:20, 17:1,
    17:17, 17:19,
    17:23, 17:25,
    18:4, 18:20,
    20:22, 21:10,
    21:19, 22:2, 23:3,
    23:10, 23:13,
    23:20, 23:21,
    24:14, 24:15,
    24:22.
ridiculous 30:22.
rights 13:19.
risk 3:19, 5:16,
    5:24, 6:3, 6:13,
    6:25, 25:4, 28:4,
    32:15, 32:18,
    34:21, 36:22,
    38:16, 38:17,
    40:5, 40:15, 41:7,
    41:9, 41:10,
    41:13, 41:23.
rob 31:23.
robbed 8:3, 11:1.

robber 31:18.
robberies 4:20,
   4:21, 4:25, 8:25,
   10:10, 10:23,
   15:23, 15:24,
   16:16, 19:3, 21:1,
   23:17, 26:6.
robbery 3:24, 15:5,
   18:9, 18:12,
   19:16, 22:6,
   31:14, 31:15,
   31:22, 35:2,
   35:3.
robbing 11:12,
   11:13.
robs 31:18.
roles 21:23.
RPR 1:46, 43:6.
ruling 38:8.
.
.
< S >.
sad 29:4.
safe 35:12.
safety 3:4, 7:2,
   14:18, 26:22,
   41:13, 41:18.
satisfied 23:3,
   24:11, 24:13,
   24:18.
satisfy 36:10.
saying 16:22,
   36:13.
says 7:19, 22:19,
   23:14, 29:14,
   29:19.
scenario 8:10.
scene 9:20.
schemes 17:24,
   19:6.
scope 22:7, 22:8.
scrutinizing
   13:20.
scrutiny 13:24,
   29:23, 30:23,
   32:5, 32:24,
   34:6.
seated 2:2.
Second 6:6, 10:12,
   33:3, 34:9.

Secondly 32:23,
   40:6.
Section 2:18, 20:6,
   35:16, 38:5,
   40:7.
sections 6:20.
seek 40:3.
seeking 2:19, 4:20,
   5:23.
seem 23:2.
seems 20:8.
seen 7:8.
sees 31:19.
selected 39:18.
sensational 33:21.
sensationalism
   27:2.
sense 42:6.
sentence 36:6.
sentences 42:16.
sentencing 36:6.
separate 42:15.
Sergeant 24:1.
series 4:19, 15:22,
   33:6, 33:7.
serious 3:19, 12:2,
   16:24, 40:15,
   40:24, 41:9.
served 11:12.
service 14:13,
   21:5.
Services 5:19, 7:3,
   7:6, 13:10,
   14:1.
serving 42:16.
set 7:5, 7:20, 19:6,
   39:2, 42:5.
sets 27:17.
setting 3:4.
seven 15:25, 16:25,
   20:25, 22:5,
   23:14.
severe 41:4.
shall 42:17,
   42:20.
shared 11:21.
sheets 15:25, 21:1,
   23:17.
shield 8:15.
shoe 15:13.

Shott 25:10, 25:23,
   27:4.
shown 14:10.
shows 39:3.
shut 31:6.
sic 26:9.
side 7:12, 29:9.
significance
   39:16.
significant 18:5.
silent 21:12.
similar 10:20.
Similarly 22:22.
simple 39:7.
simply 14:21, 27:21,
   31:4, 33:23,
   42:5.
sir 2:13, 2:14.
sister 25:22, 27:4,
   31:1, 31:6, 32:1,
   33:20, 35:13,
   37:9, 39:1.
sitting 34:14,
   36:11.
situation 30:20,
   33:5, 34:4.
skillfully 38:25.
slightly 40:17.
smuggling 22:13,
   22:20.
snitch 12:16.
society 39:16.
sole 11:22.
somebody 22:11,
   31:14.
somehow 30:11.
someone 6:2, 7:11,
   31:19, 39:21.
sometimes 11:2.
somewhat 24:17.
son 27:24, 32:21,
   37:6.
sorry 9:8, 16:8,
   30:19, 30:22,
   35:24, 36:1.
sort 23:11, 24:16,
   25:4, 26:7, 28:7,
   29:8, 29:19,
   31:10, 39:1.
sought 5:15, 7:14.

Special 1:35, 2:6,
   39:17.
specific 10:9, 11:2,
   17:21, 25:16,
   36:21.
specifically 18:8.
specified 36:9.
speed 9:14, 9:19.
spent 8:9.
sponte 40:5.
stakes 8:13, 8:15,
   10:8, 13:6, 14:3,
   14:15, 14:16,
   32:11.
stand 23:21.
standard 4:2,
   24:16.
standards 4:1.
standing 3:9.
start 17:16, 21:18,
   22:13.
starts 19:22.
state 5:4, 12:21,
   14:13, 15:5,
   15:12, 16:16,
   16:17, 16:18,
   16:20, 17:16,
   17:24, 18:1, 18:6,
   18:10, 20:2,
   20:13.
stated 42:8, 42:9.
statement 42:4.
statements 5:5,
   17:7.
States 1:1, 1:5,
   2:5, 2:7, 2:18,
   3:15, 29:25, 30:5,
   40:7, 42:19.
statute 6:20, 20:20,
   22:2, 24:22, 36:4,
   36:15.
statutes 18:12,
   18:13.
statutory 17:24,
   19:6.
stay 32:21, 37:7.
stenographic 43:7.
step 27:5.
Stephanie 2:21.
steps 13:14,

32:16.
stolen 5:9.
stop 13:8.
Street 1:48, 12:17,
   31:18.
stretch 16:6.
strictest 13:3.
strictly 38:16.
strikes 39:22.
strong 35:4.
structure 36:5,
   38:8, 39:1.
structured 40:2.
stuff 22:20.
sua 40:5.
submitted 10:10,
   23:17, 39:20,
   40:14, 41:16.
submitting 15:25,
   21:1, 33:17.
substantial 32:13,
   41:23.
substantive 19:21,
   24:5.
substituted 28:10.
succeed 17:9.
successful 32:16.
sufficient 21:8,
   26:5, 36:7.
sufficiently
   31:13.
suggesting 36:14.
suggestion 17:8,
   35:25.
supervise 13:11,
   29:20, 31:3.
supervised 13:15.
supervising 7:6.
supervision 5:18,
   26:18, 29:23,
   30:23, 32:2,
   32:25, 35:14.
supplied 39:9.
supplies 42:3.
supply 22:25.
support 25:9, 39:9,
   40:24, 41:21.
supported 26:2.
supportive 25:8.
supports 36:19.

surprise 11:10.
surveillance 13:14,
   30:17.
suspects 15:24.
sworn 10:19.
sympathy 12:9.
system 5:5, 7:11,
   7:15, 7:17, 12:25,
   14:7, 14:9,
   37:17.
.
.
< T >.
T. 1:46, 43:11.
table 2:6.
talked 29:21,
   33:25.
talks 9:25, 15:3,
   16:15, 29:9.
tamper 13:6.
tape 10:4.
Task 5:19, 23:25,
   24:1.
team 30:2.
techniques 13:13.
telephone 10:15,
   13:3, 13:5.
tells 30:25.
tend 5:12.
term 18:13, 40:8.
terms 4:1, 10:12,
   12:2, 18:15,
   22:20, 36:25.
terribly 27:24.
terrified 12:4,
   12:5.
test 21:7.
testified 12:10.
testify 8:2, 8:16.
testimony 10:19,
   10:20, 11:5.
themselves 17:24,
   26:1, 26:2,
   28:8.
they'll 37:20.
They've 12:6, 17:17,
   21:16.
third 9:24, 25:12,
   25:22, 31:1.
third-party 26:23,

27:3, 37:10,
38:25.
threat 18:9.
threaten 3:20,
3:21.
threatened 12:12,
12:13.
threats 28:19.
three 10:6, 27:6,
27:8, 31:12,
37:10.
threshold 23:13.
throughout 13:12.
Thursday 2:23.
ties 35:4, 37:5.
Title 2:18, 20:6.
today 15:21, 16:24,
25:9, 25:14, 30:2,
34:14, 35:10,
35:20, 37:22.
together 30:4.
took 11:24.
totality 41:10.
touchstone 24:20.
Trace 23:25, 24:1.
Transcript 1:17,
43:7.
transport 8:7.
treat 17:6.
tremendous 37:4.
trial 8:1, 8:8,
11:17, 34:24,
41:17.
trigger 24:23,
27:16.
trivial 14:15,
14:16.
trouble 17:21.
truck 10:3.
true 9:3, 38:15,
38:18.
trust 5:20, 7:3,
7:4, 28:9, 28:17,
29:17, 30:20,
39:2, 39:13, 40:1,
41:1.
trusted 7:18,
7:19.
trusting 28:8,
38:23, 38:24.

trusts 38:21.
trustworthiness
5:12, 5:18, 6:25,
28:12, 38:15,
39:23, 41:8.
trustworthy 5:25,
39:14, 39:25.
truthful 14:5, 14:6,
14:14.
try 8:15, 14:2,
20:23, 37:22.
trying 36:1, 36:2.
Tuesday 1:19.
turn 37:9.
turned 25:22.
turns 38:20.
two 3:16, 10:10,
11:13, 15:7,
19:25, 24:10,
31:12, 34:11.
typically 31:19.
.
.
< U >.
U.S. 30:7, 32:4,
34:17, 42:20.
ultimate 24:20,
28:12.
ultimately 38:20,
38:21, 39:2,
39:24.
unacceptable
41:23.
uncle 25:10.
underlying 17:9.
undermine 7:14.
understand 6:15,
22:22, 27:1, 28:1,
37:14.
understanding 17:21,
22:1, 42:7.
Understands 30:23,
32:6, 32:7, 37:17,
37:18, 37:19,
37:21.
unfounded 12:11.
uniform 33:20.
unique 11:7,
37:16.
uniquely 7:9,

13:10.
unit 11:12, 24:5,
24:8.
United 1:1, 1:5,
2:5, 2:7, 2:18,
3:15, 29:25, 30:5,
40:6, 42:19.
unlawful 21:5.
unless 23:5,
30:24.
unrefuted 39:11.
uphold 7:13.
.
.
< V >.
variety 31:17.
various 7:16, 19:23,
23:15.
vehicle 10:16.
version 11:18.
versus 2:7.
victims 10:19,
10:21, 10:24,
41:2.
video 10:5.
view 3:7, 7:11.
violate 32:8,
39:22.
violated 19:7,
39:21.
violation 26:19.
violations 18:1,
20:5.
violence 3:18,
15:4.
virtue 22:23,
24:18.
visitors 28:22,
31:4.
volunteered 9:21.
vouchers 21:2.
vs 1:8.
.
.
< W >.
W. 1:48.
wags 29:19.
wait 22:17.
waited 9:20.
wanted 8:15.

warrant 8:6.
Watch 10:17.
watched 34:7.
weapon 33:19.
wearing 27:13,
  33:20.
week 2:22, 2:23,
  16:4.
weight 10:13,
  15:2.
whatever 32:15,
  42:10.
Whether 6:2, 7:1,
  14:12, 14:14,
  15:10, 16:13,
  16:25, 19:24,
  20:12, 21:7, 21:9,
  22:9, 38:15,
  38:16, 38:18,
  38:20.
whim 36:14, 36:18.
whole 21:2, 21:16,
  34:13.
will 3:6, 3:13,
  3:19, 7:5, 11:18,
  12:5, 14:5, 14:6,
  15:2, 16:11,
  18:17, 25:17,
  26:21, 28:9,
  31:12, 34:22,
  35:11, 37:20,
  37:24, 40:15,
  41:9, 41:17,
  42:4.
willing 30:25, 37:8,
  39:21.
wind 12:17.
wire 19:13.
Wise 2:3, 2:4, 3:10,
  4:17, 14:20, 19:5,
  20:11, 28:16,
  29:18, 32:12,
  33:6, 33:13,
  33:21, 37:15.
wish 3:10, 14:21,
  40:17.
within 7:16, 11:17,
  14:9, 29:2.
Without 3:2, 8:23,
  17:14, 36:8.

Witness 3:22, 12:10,
  12:13, 33:24.
witnesses 10:18,
  10:19, 12:4,
  12:12, 13:7,
  28:20, 30:11,
  39:5, 42:1.
word 20:18, 37:15.
words 21:13.
work 31:6, 34:23,
  37:12.
working 8:10, 12:9,
  23:16, 28:20,
  30:3.
works 31:1.
world 34:11, 34:12,
  34:13, 34:15.
worse 4:23, 33:5,
  34:4.
writing 28:16.
written 42:3,
  42:5.
.
.
< Y >.
year 13:25, 18:11,
  18:14, 31:12.
years 25:7, 29:12,
  31:9, 40:9.