**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

**UNITED STATES OF AMERICA**

**v.**

**Daniel Thomas Hersl**

2021 JUL 12 PM 3: 25

CLERK'S OFFICE
AT BALTIMORE
BY_____DEPUTY

**Criminal No. 1:17-cr-00106**

### MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE (28 U.S.C. § 2255)
### NEW EVIDENCE - WIRETAPPING WITHOUT A WARRANT

#### CONSIDERATION FOR IMMEDIATE RELIEF REQUESTED

Daniel Thomas Hersl, (hereinafter "Hersl"), represents himself pro se and respectfully request the court to freely give leave so justice may be served. Due to his limited legal knowledge and difficulty in fully accessing resources in prison during the COVID-19 pandemic, Hersl respectfully request the court to construe this motion liberally. Hersl has prepared this motion in partnership with his family.

**Information in Book**

In Justin Fenton's (hereinafter "Fenton") book, *We Own This City*, based on a true story, on pages 169-171, the narrative explains that in mid-August 2016, GTTF investigators wanted to video and audio wiretap Momodu Gondo's (hereinafter "Gondo") take home police car. In order to get a warrant, the investigators needed to prove to the Justice Department that criminal conversations were taking place in the car. They couldn't. Instead, the investigators decided to lean in on a provision of Baltimore Police Department's (hereinafter "BPD") take-home car policy that said officers waived any expectation of privacy and could be monitored.

According to Fenton's source notes, this information regarding the Gondo car wiretap was provided in an interview by FBI Agent Erika Jensen (hereinafter "Jensen") on August 16, 2019. Jensen was the lead investigator for the FBI on the prosecutorial GTTF investigation.

## Hersl Unaware of Wiretapping Without a Warrant

Hersl was unaware of this new evidence of Gondo's take-home police car being wiretapped without a warrant signed by a Federal judge. Hersl became aware of the information documented in the Fenton book from a family member sometime around the first week in July, 2021.

## Justification for Filing a 2255 Motion

The information of a video/audio wiretap obtained without a warrant as mentioned in Fenton's book justifies the filing of this 2255 motion based on new evidence of Hersl's constitutional rights being violated.

## FBI Deceitfully Avoids DOJ Warrant Process

Per Fenton's book, the FBI had intentions of obtaining a wiretap warrant but could not get around the issue of needing proof of criminal conversations taking place within Gondo's car.

On June 8, 2016, Judge Bennett signed a warrant for a video sting operation involving the Shropshire DTO and GTTF members Rayam, Gondo and Clewell. The warrant application was authored by Jensen and approved by DOJ. Per Fenton's book on page 141, Jensen later became leery of the set-up operation and pulled the plug.

In the ongoing communications with their DOJ contacts, the FBI must have brought up a possible warrant on video/audio wiretapping of Gondo's car. Since the previous sting operation was abandoned, Jensen was most likely receiving closer scrutiny from DOJ on her future warrant applications. The heavy oversight by DOJ seems to be Jensen's motivation to go around her own agency. Jensen performed the wiretap on her own without her agency's approval.

## FBI Had Probable Cause for a Warrant

As mentioned previously, in Fenton's book it is stated that the investigators could not establish that criminal conversations were being conducted in Gondo's car. This is false. Investigators could and did establish that criminal conversations were being conducted in Gondo's car.

On July 8, 2016, during the taking of money from the Hamilton's Westminster residence, Gondo's police car was the only law enforcement vehicle at the house and therefore was the vehicle used in

2

carrying out a felony. Although not conclusive, this information establishes a nexus between the car and criminal activity.

Specifically, the GTTF warrant application dated August 10, 2016, provides conclusive evidence of a criminal conversations being conducted in Gondo's car. As documented on page 23, on the ninth line from the top, affiant Matthew Smith states:

> (July 8, 2016, 10:35 PM) Investigators believe that RAYAM had called GONDO because GONDO and RAYAM had taken money from the Westminster search location for themselves and had divided it up in some way that RAYAM felt was unfair.

On page 24 on the second line from the top, in reference to the next phone call ten minutes later, at 10:45 PM, between Rayam and Gondo, the warrant application states:

> RAYAM asked, "Are you still following homeboy?" and GONDO said he was by himself. RAYAM asked, "Can you pull over, pull over by, um, keep goin'down on Boston Street, yo, I must have passed you." … Investigators believe that RAYAM wanted to meet and talk to GONDO in person about the miscounted money.

The above two warrant application statements on pages 23 and 24 are clear that criminal activity (conspiracy and robbery) was being discussed by Rayam and Gondo while Gondo was traveling in his police take-home vehicle. It is apparent that Jensen had probable cause for a video/audio wiretap warrant on Gondo's police car. In spite of having probable cause, Jensen decided to avoid the scrutiny from her own agency and search for other means to obtain a wiretap.

## 4th Amendment Right Violated

For the USAO and the FBI to use a work-place policy on take-home cars to justify video/audio wiretapping is unprecedented. For the USAO and the FBI to forgo the approval of their own agency on the subject wiretap is not only unprecedented but also alarming. Alarming in the sense that the USAO and the FBI not only stepped over the line in violating Hersl's 4th Amendment rights, they intentionally and deceitfully violated Hersl's 4th Amendment Rights by avoiding DOJ approval and more seriously – REVIEW AND SIGNATURE BY A FEDERAL JUDGE.

3

The exact BPD policy that was relied upon by the USAO and FBI is unknown by Hersl. The current
BPD Policy on take-home vehicles, dated May 22, 2017, includes a "No Expectation of Privacy"
clause stated below:

> No Expectation of Privacy. Members who are assigned Take-Home Vehicles have no
> expectation of privacy, for federal and state constitutional purposes, including but not
> limited to, the location of the vehicle or the interior of the vehicle. The BPD retains the
> right, at its sole discretion, to place equipment on or in the vehicle to monitor its location
> and/or use, and demand that it be presented for inspection, service/repair, or surrender.

The clause is vague but can used to decipher the parameters of an expected probable cause
statement. The reason for BPD placing monitoring equipment within its take-home vehicle is stated
to be: 'to monitor its (the vehicle) location and/or use'. BPD's concern is to protect its investment in
the vehicle by knowing its location, whereabouts, and travel history. The appropriate monitoring
equipment for this situation would be a GPS tracking device. The condition of the vehicle is
inspected monthly by the immediate supervisor to insure that it is well maintained. Video/audio
recording inside the vehicle is not needed for vehicle tracking and would be invasive to the privacy
of vehicle occupants.  A probable cause statement justifying the use of a video/audio recording
devise associated with BPD policy on take-home vehicles goes against the intention of BPD policy
is inappropriate and unconstitutional. Such a scenario would not pass muster with DOJ approving
authorities or a Federal Judge.

The video/audio wiretapping without FBI participation in the conversation, and without knowledge
and consent of Hersl violates Hersl's constitutional rights particularly his 4th Amendment right not
to have information seized without a warrant. The subject wiretapping also violates the State of
Maryland's Wiretap Act and the FBI policy on wiretapping.

### A No-Warrant Wiretap is Material to Hersl's Case

#### *First Material Situation*

The information obtained from the wiretap was used by the USAO to damage Hersl's character and
credibility. An example would be the August 31, 2016, car chase and crash one block away from
the front door to the University of Maryland Hospital.  The conversation was video/audio recorded

4

and used at Hersl's trial against him. At the particular moment of the crash, Hersl's adrenaline and associated emotions were high. In such a situation, Hersl has the tendency to nervously verbalize his options (good and bad) prior to taking action.

In this particular situation, Hersl suggested that the overtime slip for that evening not incorporate the hours of the crash. In reality, Hersl did not have the authority to set the overtime hours and had no means of checking the overtime hours given on a particular night. Hersl's overtime hours were documented as a lump sum on a bi-weekly pay receipt. The suggestion of falsifying the overtime slip was nothing more than a passing emotional response which is indicative of the stressful job of being a policeman.

In his trial, the prosecutor used the warrantless recording to villainize Hersl, before an attentive jury, as a cunning individual planning to falsify his overtime slip. The jury was swayed by the prosecutor's story as was the news media covering the trial and the general public following the international event. It is most probable that the jury used this warrantless information in part to convict Hersl of wire fraud associated with overtime fraud.

### *Second Material Situation*

In Fenton's book on page 189, he mentions Hersl's private conversation with Gondo on February 15, 2017, which was recorded in Gondo's car on the wiretap without a warrant.

Hersl recalls in that conversation, he spoke to Gondo about Rayam and his upcoming interview with Internal Investigative Division (IID). Rayam recently shared with Hersl that he was worried about the interview which might be about the Hamilton case. Hersl shared with Gondo that he told Rayam if he did nothing wrong than he had nothing to worry about in the interview. As of February 15th, Hersl was unaware of money being taken from the Hamilton's but was suspicious due to his discussion with Rayam and Rayam's nervousness about the Hamilton case. As part of the conversation in Gondo's car, Hersl began to quiz Gondo about the Hamilton case. Hersl sought to find out from Gondo his take on the Hamilton case and if Rayam took money from the Hamiltons. Gondo held tight to any information he had. However, Hersl remembers Gondo wearing a $700 pair of shoes and a Rolex watch that day. Such extravagant fashion for a plain clothes police officer always made Hersl suspicious of Gondo and his close comrade Rayam.

5

In a later conversation with Jensen after Hersl's arrest, she reminded him to go back to his conversation with Gondo a week or two prior to his arrest. Jensen was alluding to Hersl disclosing his involvement with robbing the Hamiltons. Hersl has not heard the recording of the subject conversation but believes his talk with Gondo was taken out of context and used against him.

Hersl is aware that the relevant facts contained in warrants prior to February 15, 2017, indicate that Gondo and Rayam discussed hours after leaving the Hamilton residence of taking money from the Hamiltons and splitting it. All of the evidence concludes Gondo and Rayam took $20,000 from the Hamilton's residence and split it. It also concludes that Rayam took $3,400 from Ron Hamilton and kept it for himself.

The relevant facts on all warrants after February 15, 2017, tell a different story. These relevant facts, mention a Hamilton interview where Hersl is accused of robbing the Hamiltons. It appears that the relevant facts were manipulated by the GTTF investigators to indicate that Hersl participated in the robbery of the Hamiltons. The manipulated relevant facts are contradictory to Ron Hamilton's testimony at trial where Hamilton never testified specifically that Hersl stole money from him.

In summary, the information obtained in the warrantless Gondo/Hersl wiretap conversation was taken out of context by the GTTF investigators and used to justify a manipulation in the warrant documents. The manipulation in the warrant documents are obviously associated with the ambiguity in the relevant facts associated with the Hamilton's Westminster home invasion. In the subject conversation, Hersl never confessed to robbing the Hamiltons. Nevertheless, investigators used the no-warrant conversation against Hersl to bring charges of him robbing the Hamiltons.

**Set-up Further Substantiated**

In his original 2255 motion, Hersl contends that he was set-up by GTTF investigator(s) by means of a "guilt by association" scheme. Hersl has shown that baseless and deceitful manipulation of warrant information was used against him.

In addition, the recent proclamation by AUSA Peter Martinez on March 12, 2021, before a 4th Circuit Appeal hearing that the government witness, Keyon Paylor, provided false grand jury

6

testimony against Hersl provides credibility to Hersl's claim of being set-up. (Criminal Case: ELH-14-271, Related Civil Action: ELH-18-745). In that same hearing, Appellate Judge Thackers' pointed questioning and concern for suborning perjury by the USAO further provides substantial credibility to Hersl's claim.

As the information on the subject non-warrant wiretap comes to light, the deceptive and illegal practices of the GTTF investigators continue to be unveiled adding even more credence to Hersl's set-up claim.

### Brady Violation

Hersl believes that the information provided by Jensen in Fenton's book is a "Brady Violation". Since a no-warrant situation was never brought up, i.e. the no-warrant wiretap, Hersl believes his former lawyer was never given any information during discovery. Hersl is not fully sure however, since his former lawyer has been generally non- responsive to him since Hersl's conviction. Once and only once, the general topic of warrants was brought up and Hersl's former lawyer stated the warrants were all signed by judges so they are OK. Hersl's former defense counsel never brought up the fact that a warrant for the wiretap on Gondo's car was missing.

The information provided by Jensen in Fenton's book is enough to justify a new 2255motion to vacate based on new evidence. However, it is not the complete evidence associated with the non-warrant wiretap.

### Requested Information

The requested information below is exculpatory in nature and will provide a more detailed and better understanding of the intentions, actions, and approval process within the FBI, USAO, DOJ, and BPD, with regard to using a work-place policy on take-home cars as justification for wiretapping private conversations without a warrant.

In search of information and justice that has been denied him, Hersl ask the court to compel the USAO to supply the following information in their response to this motion:

7

a) a copy of the Baltimore Police Policy on take-home cars relied on and used by GTTF investigators, prosecutors, supervisors, and the U.S. Attorney for Maryland.

b) a copy of all consent form(s) signed by Gondo with regard to receiving the BPD take-home car policy and agreeing to be video/audio recorded.

c) a copy of all consent form(s) signed by Hersl with regard to receiving the BPD take-home car policy and agreeing to be video/audio recorded.

d) a copy of all posted notification(s) that informed passengers in Gondo's take-home car of possible video/audio recording devices within the vehicle.

e) a copy of the probable cause statement and all approvals and approving documents associated with the statement regarding the video/audio wiretapping of Gondo's take-home car.

f) a copy of the FBI policy on wiretapping in effect in August 2016, at the time of approving the probable cause statement for the video/audio wiretapping of Gondo's take-home car.

g) a copy of all internal communications between GTTF investigators, prosecutors, supervisors, and the U.S. Attorney for Maryland regarding the use of BPD policy to video/audio wiretap Gondo's take-home car.

h) a copy of all communications between the USAO and FBI with the Department of Justice regarding the use of BPD policy to video/audio wiretap Gondo's take-home car.

i) a copy of all communications between GTTF investigators, prosecutors, supervisors, and the U.S. Attorney for Maryland with the BPD regarding the use of BPD policy to video/audio wiretap Gondo's take-home car.

j) a copy of any and all notes of FBI Agent Erika Jensen on the subject of Gondo's video/audio wiretap of his take-home car including notes pertaining Jensen's interview with Fenton on August 16, 2019.

k) a copy of the list of other BPD take-home vehicles that were wire tapped at any time in 2015, 2016 or 2017.

## Protection With Consideration of 6th Amendment Rights

The requested information does not appear to interfere with the USAO's concern with "Witness Protection" and "Ongoing Investigation Secrecy". Therefore, there appears to be no need to protect the documents. If there is an unforeseen need to protect the documents, Hersl request his 6th Amendment rights be considered and alternative methods be considered to provide the information.

Redaction can protect sensitive information and well as a secure computer such as that used by the government in the El Chapo case (United States *v.* Beltran-Leyva (1:09-cr-00466)).

## Grounds for Relief

**GROUND 2-1:** Vehicle was wiretapped without a warrant

Violation:  Illegal Search - Fourth Amendment violation

Violator:  USAO, FBI, GTTF investigators, and possibly DOJ and BPD

Evidence:  Justin Fenton's book, *We Own This City*, pages 169-171, published Spring 2021, based on a true story.

**GROUND 2-2:** Defense Counsel was ineffective in reviewing discovery material and questioning missing warrant for video/audio wiretap on Gondo's car.

Violation: Ineffective Defense Counsel – Sixth Amendment violation

Violator: Defense Counsel

Evidence:  Missing warrant, probable cause statement and associate documentation for wiretap on Gondo's take-home police car

**Relief Requested**

Hersl request the conviction against him be vacated, the case against him be dismissed, and his release from prison.

**Consideration for Immediate Relief**

Within his original 2255 motion Hersl has proven his innocence and shown the government's constitutional due process violations against him. The USAO has displayed animus against Hersl which Hersl has revealed by acts of criminal malfeasance and prosecutorial misconduct. In addition, Hersl was ineffectively represented by an obvious and overwhelmingly overworked attorney.

Due to the above, Hersl further request the court consider the relief requested to be immediate. Such obvious injustice makes his predicament unjust and his continued incarceration an unwarranted burden to bear.

## VERIFICATION

I have read the foregoing "MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE (28 U.S.C. § 2255); NEW EVIDENCE - WIRETAPPING WITHOUT A WARRANT" and hereby verify that the matters alleged herein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true and correct. Executed at the U.S. Medical Center for Federal Prisoners, Springfield, Missouri, on this 12th Day of July, 2021.

Respectfully submitted,

Daniel Thomas Hersl
Federal Inmate # 62926-037

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that the forgoing "MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE (28 U.S.C. § 2255); NEW EVIDENCE - WIRETAPPING WITHOUT A WARRANT" was delivered by hand on the 12th Day of July, 2021 to:

United States District Court
Office of the Court's Clerk
101 West Lombard Street
Baltimore, Maryland 21201

Mr. Hersl respectfully requests the Court's Clerk Office to serve all other interested parties by electronic notification and serve the movant with a stamped and filed copy of this motion.

11