# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

BALTIMORE-NIGHT BOX

2021 AUG 16  PM 11: 23

U.S. BANKRUPTCY COURT

**UNITED STATES OF AMERICA**

FILED
LODGED          ENTERED
RECEIVED

**Criminal No. 1:17-cr-00106**

**v.**

AUG 1 6 2021

**Civil No. CCB 20-3213**

**DANIEL THOMAS HERSL**

CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
NIGHT DROP BOX

## REPLY TO GOVERNMENT RESPONSE 2255 MOTION TO VACATE
## EMERGENCY CONSIDERATION REQUESTED

### I. Pro Se Representation and Family Assistance

Daniel Thomas Hersl, (hereinafter "Hersl"), represents himself pro se and respectfully request the court to freely give leave so justice may be served. Due to his limited legal knowledge and difficulty in fully accessing resources in prison during the COVID-19 pandemic, Hersl respectfully request the court to construe this reply liberally. Hersl has prepared his 2255 motion including this reply with no legal assistance an in partnership with his brother Jerome. The Bureau of Prisons email system and phone system have experienced technical difficulties during this partnership effort and so this reply was not fabricated under the best of conditions.

### II. Hersl's Ongoing Legal Activity

In association with Hersl's reply to this 2255 motion, the following legal activity is being pursued:

A. An informal brief has been submitted to the 4th Circuit appealing the prior decisions on this 2255 reply including:

1. Not to require the U. S. Attorney to sign the government response to this motion,

2. Not to recuse AUSAs, Schenning, Wise and Hines from case against Hersl

3. Not to provide Hersl with legal counsel on this 2255 reply to government's legal arguments

1

B. A motion to terminate the protection of discovery documents was filed on June 29, 2021.

The following legal activity is being pursued and not associated with Hersl's 2255 motion.

A. A separate 2555 motion based on new evidence of wiretapping without a warrant was filed on July 12, 2021.

B. A separate 2255 motion will be filed in the very near future regarding new evidence of protected information restricting Hersl's 6th amendment right to fully confront his accusers. The submittal of the separate 2255 motion may overlap this 2255 motion.

### III. Definition of USAO and GTTF Investigation Team

Within this 2255 motion, Hersl has documented very serious and definitely concerning allegations of prosecutorial misconduct and illegal activity carried out by the USAO and the GTTF investigation team. Within this document, Hersl defines these organizations as:

**USAO:** When Hersl uses the term USAO he means the Maryland U.S. Attorney's Office in Baltimore headed by the Maryland U.S. Attorney. The office includes political appointees, supervisors, Assistant U. S. Attorneys (AUSA), employees, contractors, and contract employees.

When Hersl alleges a crime or misconduct by the USAO, he alleges that crime or misconduct was committed by individual(s) of the USAO, known or unknown, and under the command and supervision of the Maryland U.S. Attorney. Hersl does not imply that every member of the USAO was involved with committing the crime or misconduct.

**GTTF Investigation Team:** Hersl defines the GTTF investigation team to be a prosecutorial investigation team which is all inclusive and includes co-prosecutors AUSA Derek Hines (hereinafter Hines) and AUSA Leo Wise (hereinafter Wise); Lead Investigator FBI Special Agent Erika Jensen (hereinafter Jensen); FBI Task Force members; other employees and contractors of the USAO and FBI associated with the GTTF investigation; DOJ leaders,

2

supervisors, employees, and contractors associated with the GTTF investigation; DEA leaders, supervisors, agents, employees, and contractors associated with the GTTF investigation; ATF leaders, supervisors, agents, employees, and contractors associated with the GTTF investigation; and others; all of which some are known and the greater majority are unknown.

When Hersl alleges a crime or misconduct by the GTTF Investigation Team, he alleges that the crime or misconduct was committed by individual(s) of the GTTF Investigation Team , known or unknown , and under the command and supervision of the Maryland U.S. Attorney; co-prosecutors Derek Hines and Leo Wise; and Lead Investigator FBI Special Agent Erika Jensen. Hersl does not imply that every member of the GTTF Investigation Team was involved with committing the crime or misconduct.

## IV. Opening Statement

### *Background*

Generally, Hersl's overall 2255 claims focus on the engagement in prosecutorial misconduct, disregard for human safety, and illegal activities by the USAO and GTTF investigation team. The unprofessional, inhumane, and criminal behaviors of the USAO have brought on an exorbitant amount of exacerbating abuses to Hersl's constitutional rights. Defense Counsel was ineffective in protecting Hersl against the constitutional abuses mainly due to the overwhelming demands of his professional workload. Hersl's Defense Counsel was heavily involved with drug cartel leader El Chapo's legal team at the same time he was representing Hersl.

### 28 U.S.C. 2255 Procedural *Bar*

In the government's response to Hersl's 2255 motion, the author, AUSA Wise ask the court to procedurally bar Hersl's grounds for relief as they do not meet the requirements of (a) & (b) except for: 1) Suborning Paylor testimony and 2) Ineffective assistance of counsel of which Wise addressed both.

Within this reply Hersl counters Wise's argument and explains how he meets the default procedure for filing a 2255 motion in addition to an alternative procedure default mentioned by

3

Wise. The alternative default procedure offered by Hersl is proof of actual innocence. In addition Hersl offers circumstances of extreme USAO's constitutional abuses and illegal activity against Hersl.

Along with ineffective assistance of counsel which Wise acknowledges meets the default procedure, the two alternative circumstances of 1) proof on innocence and, 2) constitutional and illegal activity by the USAO, Hersl believes he has met the bar for his 2255 to be heard.

Because of the circumstances above, "a miscarriage of justice" would result if the court refused to entertain Hersl's collateral attack.

### Proven Innocence

Within his 2255 motion, Hersl has proven his innocence despite not having access to discovery documents and other evidence.

In brief, with respect to the Hamilton case, Hersl has shown that the USAO knew through government phone taps, only Gondo and Rayam robbed the Hamiltons; as in previous robbery situations, Gondo placed his share of the robbery proceeds in his bank account on the next business day; Gondo's bank account deposit of $8,000 from the $17,000 taken corroborates that the money was not split four ways; Hersl explains how the USAO manipulated a Hamilton interview and the "Relevant Facts" of a warrant application just a week prior to Hersl's arrest to show Hersl and Jenkins robbed the Hamilton's along Gondo and Rayam; the USAO is in possession of suppressed evidence that Hersl and Jenkins had no gun at the Hamilton residence.

In addition, with respect to wire fraud, Hersl and BPD have shown there was no scheme and no fraud associated with policemen being "rewarded and compensated", as sanctioned by command and supervision, for going "beyond the call of duty". Co-prosecutor Wise himself manipulated a local payroll administrative gaffe into an interstate wire fraud charge knowing full well that the transaction between Hersl and the BPD was on a quid pro quo basis and not a fraud based on "Hersl claimed to work when he did not". Since the beginning of Hersl's police career, over one thousand police officers were given "rewarded and compensated", as sanctioned by command

4

and supervision, for going "beyond the call of duty" in the same manner as Hersl. Just like the Paylor case, co-prosecutors Hines and Wise knowingly skewered the truth to benefit their case.

The proven innocence on the Hamilton and wire fraud racketeering acts erases the guilty conviction of RICO and Hobbs Act Robbery charges.

### *Silence of USAO*

Except for "Suborning Paylor testimony", Wise is silent on all USAO prosecutorial and illegal misconduct claims brought forth by Hersl. Wise made no attempt to deny and/or explain any of Hersl's facts regarding the USAO engagement of prosecutorial misconduct, disregard for human safety, and illegal activities. There were no specific denials to Hersl's facts regarding: falsifying and withholding "Totality of Facts" in warrant applications; grand jury tampering; suborning Jimmie Griffin perjury; ignoring false verdict on Jimmie Griffin; sabotaging Defense Attorney effort; having Hersl sign legal documents under duress and the influence of narcotics; and, putting Hersl in harm's way.

As explained to Hersl by Appeals Defense Counsel, any of Hersl's claims that were not objected to by Trial Defense Counsel are not appealable. Those issues are to be brought up at the 2255 stage of Hersl's legal process. All of the grounds for relief brought forward by Hersl in his 2255 are grounds that Appeals Defense Counsel labeled unappealable and ripe during the 2255 process or based on new evidence.

## V. General

### A. Hersl Continues to be Without Access to Vast Majority of Discovery Material

The discovery material in Hersl's case is protected by court order except for GTTF warrant documents that were publicly released to the *Baltimore Sunpapers*. The USAO is using the "protecting of documents" differently then what it's lawful and rightful purpose is meant to cover. The USAO states that their need to protect documents is for the safety of witnesses and the secrecy of ongoing investigations. Instead, in a pattern & practice manner,

the USAO has used the protection of documents for the purpose of prosecuting an uninformed defendant and at the same time hiding their misconduct and illegal activities.

The withholding of discovery material by the USAO and Defense Counsel has restricted Hersl's sixth amendment right to fully confront his accusers. In addition to any work related notes Hersl had at the BPD, he is without personal phone records, BPD time and attendance records including the critical *rollbook*, and BPD arrest records and reports.

Within his 2255 documentation, Hersl has "factually" proven his innocence mainly through recall of his personal experience and the GTTF warrant documents. If Hersl had access to all of the discovery material, he could better corroborate the facts related to his innocence.

Whenever Hersl has been provided information which has been withheld from him prior, Hersl has used that information to show his innocence. An example would be the warrant documents obtained by the *Sunpapers*. Hersl was able to bring forth the corrupt warrant applications and show how the GTTF Investigation Team skewered the Hamilton interview with "Relevant Facts". Also, in Justin Fenton's book, *We Own This City*, Hersl's supervisor, John Burns vouches for Hersl before supervisors by telling them "criminals feared Hersl so much, they made false complaints and allegations"; "Hersl has always been a great detective and I never had any issues with him. He worked for me for almost 8 years and never saw him do or say anything inappropriate that I am aware of"; "We can't let criminals dictate the lives of our officers." Burns was with Hersl on the Tate, Santiful, and Griffin alleged robberies. It is hard to believe that Burns didn't testify at Hersl's trial. It's a mystery.

## B. Concern of Government Response
### *Talking Out of Both Sides of Mouth*

The criminal act of suborning perjury by the USAO was brought to Hersl's attention through media coverage of a 4th Circuit appeals hearing (*United States v. Paylor, 1:14-cr-00271*) on March 12, 2021. During questioning of AUSA Peter Martinez (hereinafter Martinez), 4th Circuit Appellate Judge Stephanie Thacker voiced her concern that the

government was "talking out of both sides of its mouth" and questioning whether its argument was in the "best interests of justice."

Judge Thacker's concerns are Hersl's concerns. In an attempt to avoid the USAO talking out of both sides of its mouth, Hersl made a motion to have the Maryland U.S. Attorney sign the government response. The motion was denied and is respected by Hersl. However, the concerns of the USAO speaking out of unison with regard to Hersl remain real.

### ***Concealment of Misconduct***

Illegal activity, malfeasance, and credibility issues within the USAO have been alleged by Hersl. As such, a motion was filed, denied, and respected by Hersl to recuse former Acting US Attorney Stephen Schenning, AUSA Leo Wise, and AUSA Derek Hines from further involvement in Hersl's case.

However, Hersl is still concerned that Wise still has the opportunity to use his position to protect himself and others by concealing evidence regarding the very serious allegations against him, the USAO, and the GTTF investigation team.

### C. Paylor's Litigation Has Bearing On Hersl's Case

Wise makes the statement that the Paylor litigation has NO bearing on Hersl's case.

Wise than goes on to admit that the Paylor case is not procedurally barred from the 2255 process. With regard to the two suborning cases, it seems strange why Wise feels Paylor is not barred but Griffin is. In addition Wise denies that perjury was suborned in Paylor's grand jury testimony as a government witness but doesn't deny Griffin's testimony was suborned.

The fact is that Paylor's story was falsely, corruptly, and dangerously vetted by co-prosecutors Hines and Wise with intent to harm Hersl. Paylor was transported from out-of-state prison; interviewed by Hines, Jensen and another FBI agent; and then within the same day presented to the grand jury to false testify that Hersl was a corrupt person. (See Hersl's full reply to Wise's response on Paylor)

7

Hersl questions Wise's effort to defend against suborning Paylor's perjury if Wise truly believes Paylor's litigation has nothing to do with Hersl's case. Why put in all of that time? Is Wise being facetious or as co-prosecutor with Hine is Wise trying to protect himself against conspiracy, abetting of perjury, cover-up, and obstruction of justice charges?

Hersl takes a strong exception to Wise as the Paylor case has everything to do with Hersl's case. Paylor's litigation of his 2255 motion has publicly revealed the animus, unfairness, and desire by members of the USAO to harm Hersl in reputation as well as in physical and mental health.

Wise states there are dozens of cases where the prosecutor used jail calls to identify dozens of robberies. Hersl ponders if any of the dozens committed perjury against him? Hersl ponders if he will ever know.

### D. Administrative Numbering of Grounds for Relief in 2255 Supplement (ECF 662)

Within 2255 Supplement 1 (ECF 662), grounds for relief were documented but not administratively numbered. The grounds were organized into Hersl's GROUND numbering format and listed in EXHIBIT O.

### E. Substantiation of Grounds

In a general manner, Wise states that Hersl's claims are unsubstantiated. In a general reply, Hersl acknowledges a few grounds for relief that are unsubstantiated but the greater majorities are not.

For example, **GROUNDS 1 thru 4 and 6** are well documented with facts that substantiate Hersl's claim on 4th Amendment violations of illegal searches caused by tainted warrant applications. However, GROUND 7 titled "Grand Jury Indictment is Overwhelmingly Suspect" was an educated speculation based on the well documented abuses involving warrant applications. The "Relevant Facts" within warrant applications are usually the basis for grand jury investigations or memorializing testimony of government witnesses which eventually lead to indictments. If the warrants are tainted the taint gets transferred to the resulting indictment which becomes tainted as well

In Hersl's 2255 Addendum 1, he reports on the Jimmie Griffin perjury in **GROUND 30** and the suborning of Jimmie Griffin's perjury against Hersl by co-prosecutors Wise and Hines in **GROUND 35**. This suborning of perjury gave credibility to the tainting of the grand jury process and the indictments associated with them because Jimmie Griffin lied in court and most likely at the grand jury as well.

Later in this reply, Hersl reveals proof that co-prosecutors Hines and Wise suborned perjury at the grand jury. The proof is based off accumulated statements Martinez made as an officer of the court before Judge Ellen Holland in a Paylor motions hearing on March 7, 2019. This is the second time Hines and Wise suborned perjury against Hersl with Griffin being the first. This fully substantiates a tainted indictment against Hersl based on corroborating evidence of a pattern and practice of Hines and Wise suborning perjury against Hersl. Thus, **GROUND 39** dealing with suborning Paylor's perjury is now fully substantiated.

Also because of this substantiation of facts, the title for GROUND 7 changes from:

> **GROUND 7** - Grand Jury Indictment is Overwhelmingly Suspect
> Violation: Right to a Grand Jury and Due Process Violated – Fifth and
>             Fourteenth Amendment Violation
> Violator: Prosecutor
> Evidence: Lack of credibility and integrity in the investigation thus indicating
>             prosecutorial misconduct carrying over into the Grand Jury hearings

**To:**

> **GROUND 7** – Superseding Indictment Against Hersl is Fraudulent
> Violation: Prosecutorial Misconduct – Fifth, Sixth and Fourteenth Amendment violation
> Violator: Prosecutor Derek Hines
> Evidence: Trial Transcripts, Grand Jury Transcripts, Video of George Lee testimony in
>             his State Civil Case Against Hersl, Government Briefs on Paylor's 2255
>             Hearing and Appeal.

Other claims for relief that are currently unsubstantiated but based on educated speculation are **GROUNDS 40,41,and 43 thru 46**, dealing with grand jury tampering, Wire and Mail fraud, along with RICO conspiracy and racketeering.

### F. Pattern & Practice

Hersl defines pattern and practice as a criminal process happening in two steps. First, a pattern of engaging in biased behaviors through misconduct and /or illegal activities is developed by individuals. If the criminal party is successful developing their pattern of criminal activity then they move on to the second step. That step is to repeat the pattern of criminal activity in a systemic fashion by means of unofficial policies and procedures.

Pattern and practice is a term associated with RICO. At the encouragement of Loretta Lynch and DOJ's Civil Rights Division, the GTTF Investigation Team was in search of a pattern and practice of the BPD that violated the constitutional civil rights of Baltimore Citizens. Ironically, in the search, Hersl's civil rights were violated. For whatever reason, he was framed into a "guilt by association" scheme. Step by step, GTTF investigators developed multiple patterns of misconduct and criminal behavior such as:

- Withholding critical material information from a warrant application in such a way as to deceive the warrant signing authority from having the "Totality of Facts" needed for making a proper decision in signing the warrant.
- Lying on a warrant application
- Falsely vetting a government witness's story thus allowing the government witness to perjure themselves
- Falsifying 302's
- Suborn perjury

Each one of the above patterns at some point became successful and then turned into a practice of misconduct and criminal behavior against Hersl that violated his constitutional rights.

Wise ignores Hersl's use of "pattern and practice". Hersl uses the term with corrupt warrant applications, suborning perjury, and RICO allegations against co-prosecutors Wises and Hines. Perhaps this is one of Hersl's claims that Wise refers to as outlandish or fantastical. By no means is Hersl outlandish or fantastical in his claim. Hersl used facts from official documents and went to great depths to explain the corrupt warrant applications, suborning perjury, and RICO allegations.

In brief, within Hersl's 2255 the details were documented specifically how the warrant applications are corrupt and how perjury of Griffin against Hersl was suborned by co-prosecutors Hines and Wise. Within this reply Hersl documents how perjury of Paylor against Hersl was AGAIN suborned by co-prosecutors Hines and Wise. Each time evidence was skewered by ignoring the simple arithmetic to falsely validate the government witness's false story. **This is a perfect example of using "pattern and practice" to describe the criminal behavior of co-prosecutors Hines and Wise against Hersl.**

In suborning perjury before a Federal Jury, Hines and Wise had to communicate with out of state officials to get Griffin and Paylor transferred to the grand jury proceedings. Using the wire and/or mail to carry out the suborning of perjury is a wire fraud and/or mail fraud. Doing it twice, once for Griffin and once for Paylor makes it a Federal RICO charge against Hines and Wise.

Wise mentions that there were dozens of government witnesses similar to Paylor that were used to bring convictions against police corruption in Baltimore. Given the "pattern and practice" of Hines and Wise's criminal behavior, Griffin and Paylor are unlikely the only two government witnesses whose testimony was suborned.

## VI. The Law

### A. 2255 Motion Without Legal Education, Knowledge, Experience or Advice

Hersl has no expertise to defend against technical legal arguments which present the

possibility to dispose of grounds for relief that he has presented. Hersl is not educated, trained, and experienced in the Law. Thus Hersl lacks the knowledge and skills to appropriately respond to legal arguments against him. However, he makes an attempt at it.

### B. 28 U.S.C. 2255 (a) and (b)

In reply to AUSA Wise's concerns about the grounds with respect to 28 U.S.C. 2255 that apply in Hersl's case, Hersl contends that his 2255 motion is based on his sentence being unlawful. The Hersl's sentence resulted from the pattern and practice of misconduct and illegal activity by the USAO which violated Hersl constitutional right during the investigation, prosecution, and sentencing processes of Hersl's case. In addition, Hersl's Defense Counsel provided ineffective assistance in protecting Hersl's 4th, 5th, 6th, 8th, and 14th amendment rights and the criminal abuses of the USAO. As such, Hersl's GROUNDS 1 thru 50 fall under 28 U.S.C. 2255 (a) [1] and [4].

> [1] that the sentence was imposed in violation of the Constitution or
> laws of the United States,
>
> [4] is otherwise subject to collateral attack

In accordance with 28 U.S.C. 2255 (b), Hersl request the court reward habeas relief as a result of denial or infringement of the constitutional rights of Hersl, the prisoner, as to render the judgment vulnerable to collateral attack.

With regard to sentencing, the Federal Sentencing Guideline adjustments were incorrectly applied to Hersl's sentence calculation. As such, Hersl's associated **Grounds 51 and 57** fall under 28 U.S.C. 2255 (a) [3] in addition to [1] and [4] above.

> [3] that the sentence was in excess of the maximum authorized by law

With regard to sentencing, in accordance with 28 U.S.C. 2255 (b), Hersl request the court reward habeas relief as a result of the sentence imposed not being authorized by law or otherwise open to collateral attack.

C. **Doctrine of Procedural Default and Alternative**

In consideration of Wise's concern of the Fourth Circuit holding to the doctrine of procedural default, Hersl respects and responds:

Each of the grounds for relief submitted by prisoner Hersl under this 2255 motion were not contested at the district court by Hersl's Defense Counsel prior to direct appeal and therefore not ripe for appeal. Hence, prisoner Hersl files his claims under the doctrine of procedural default.

In addition, all of the grounds for relief submitted by Hersl when considered together highlight the USAO and the GTTF investigation team working with them, carrying out a disdainful bias against Hersl and a blatant disregard for justice. The claims of prosecutorial misconduct and illegal activity by the USAO are reflected in:

- knowingly entrapping Hersl without his knowledge by placing Hersl in a close working environment with two very dangerous and corrupt of police officers. The entrapment was to ASSOCIATE Hersl with police corruption in a "guilt by association" scheme
- two proven suborned perjuries against Hersl,
- at least five illegal warrants served against Hersl,
- torture involving over four months of solitary confinement prior to trial and resulting in an unknown impairment of cognitive abilities
- encouraged under duress and cognitive impairment to sign legal documents while under the influence of government prescribed narcotics

The acts by the USAO and the GTTF investigation team are an extreme miscarriage of justice. It would be a continued extreme miscarriage of justice if Hersl's collateral attack requesting habeas relief were refused to be entertained by the court.

Wise has remained silent and not provided any specific argument to any of the grounds for relief regarding prosecutorial and illegal misconduct, other than the Paylor issue. In the government's

reply, Wise has not denied any facts with respect to these grounds, including **GROUND 35** - Prosecutor Suborned Perjury (Jimmie Griffin).

As such, Hersl request the immediate relief of vacating his conviction and releasing him from prison based on **GROUNDS 21-29, 35-38, 52-57**, all of which deal with the USAO violating Hersl's constitutional rights in a most egregious way.

### D. "Higher Hurdle" Requirement

Hersl acknowledges and respects Wise's concern for the "higher hurdle" requirement that applies to claims advanced for the first time in a 2255 motion. The "higher hurdle" requirement in Hersl's case is the documented extreme miscarriage of justice against Hersl by the USAO and the GTTF investigation team coupled with the ineffective assistance of Defense Counsel in addition to his proven innocence.

### F. Should Jury Confusion be Ignored?

With regard to **Ground 31** – Defense Counsel Neither Challenged Unsupported Verdict With Regard to Jimmie Griffin nor Perform a Post Trial Review of the Case, and **Ground 36** - Prosecutor Allowed Unsupported Robbery Verdict Regarding Jimmie Griffin to Stand, Wise chose to ignore.

This is a case that the jury was confused and a verdict other than the one the prosecutors were pursuing was selected. In simple terms, the verdict sheet allowed the jury choices A and B. The government was very, very specific in that they tell the jury they proved A. The jury then in an illogical manner selected B.

Specifically, throughout the trial and the closing statement the government stated that Jimmie Griffin gave consent to be searched and such consent constituted extortion and not robbery. In the closing argument, the government further instructed the jury that if they found Hersl guilty, they should select extortion on the verdict sheet.

The jury selected robbery, NOT extortion on the verdict sheet.

As mentioned in the Grounds 31 and 36 write up, the Defense Counsel had the duty (not a choice) to challenge the verdict. Defense Counsel did not challenge the verdict. Clearly a case of IADC and another example that Defense Counsel did not have his "head in the game".

By an objectionable standard, ABA Prosecutorial Function Standard 3-8.1, the prosecutor has a duty not to defend a conviction when a miscarriage of justice has occurred. Both co-prosecutors were involved with the verdict sheet and the intimate details of the case. Both negated their duty to speak out about the miscarriage of justice but instead supported the verdict with silence. At sentencing, both co-prosecutors supported an upward adjustment for the Jimmie Griffin robbery and again, Defense Counsel had no challenge.

Overall, the government's case against Hersl with regard to Jimmie Griffin was always extortion and not robbery. The verdict sheet should have only stated extortion in lieu of providing a selection of extortion or robbery. Obviously, the jury was confused and found Hersl guilty on a charge of robbery when robbery was never proved, nor was it ever intended to be proved. The Griffin case was always undisputed with regard to Griffin giving consent for a search of his person.

## VII. Reply to Government Response

### A. Re-Litigate vs Litigate

AUSA Wise alleges that Hersl is re-litigating all aspects of the investigation into his criminal conduct, the trial he received and his sentencing. Contrary to what was stated by Wise, Hersl DID NOT LITIGATE any aspects of the investigation, trial and sentencing and DOES NOT RE-LITIGATE any of those same aspects. How could Hersl litigate? He was denied by the USAO and Defense Counsel access to discovery documents for review, study and analysis.

It was the USAO and Hersl's Defense Counsel who did the litigating in an effort to bring truth to Hersl's criminal proceeding. During the litigation effort, the USAO showed a pattern and practice of misconduct and illegal activity which violated Hersl's constitutional rights. At the same time Defense Counsel was ineffective in protecting

15

Hersl against the misconduct, illegal and constitutional abuses of the USAO. Thus the truth in Hersl's case was not delivered.

In pursuit of the truth, Hersl IS LITIGATING a 2255 motion against the USAO and defense counsel. As such, Hersl points out the circumstances and events of their litigation that violated and failed to protect his constitutional rights.

### B. Suborning Paylor's Perjury

    **1.** In response to Hersl's **GROUND 39** that co-prosecutors Hines and Wise suborned perjury (ECF 652, page 4),Wise states the "Government" did not commit suborned perjury. As Hersl explains in the Finger Pointing Chart (EXHIBIT P), Wise does not specifically reveal the identity of the "Government" in order to hide responsibility associated with Paylor lying against Hersl before the grand jury. Wise has effectively taken the attention off of Hines and himself and redirected it to the "Government". Who's the Government exactly?

To answer Hersl's GROUND 39, why didn't Wise say that Hines and Wise did not suborn perjury? Is Wise trying to hide that he was part of a scheme to suborn perjury from Paylor before the grand jury?

    **2.** Wise states that Paylor was identified through review of jail calls. Wise then credits dozens of robberies that were later substantiated through a variety of evidence after jail calls was reviewed. Thus Wise compares the Paylor case with success of dozens of other cases. However, Wise fails to admit that the Paylor case was a total failure. It was a failure due to co-prosecutors Hines and Wise failing to properly vet Paylor's story, thus giving Paylor the opportunity to lie to the grand jury against Hersl.

Substantiation of jail call claims through a variety of GOOD evidence PRIOR to grand jury presentation does not give jail call candidates the opportunity to perjure themselves. Co-prosecutors Hines and Wise manipulated evidence and then falsely corroborated Paylor's story prior to his false grand jury testimony.

16

**3.** During Paylor's 2255 motion hearing on March 7, 2019, Paylor's 2255 lawyer,

Gayle Horn, found it incredible to think that Paylor's story wasn't vetted by the prosecutors PRIOR to his grand jury testimony (Paylor motions hearing transcripts ≈ 22:17). Incredible as it may be, Martinez stated before Judge Hollander:

*"And what I can tell the Court is that the unified position of our office is that Mr. Paylor's guilty and that his plea was knowing and voluntary.*

*We mentioned in our brief that at the time Mr. Paylor testified in the grand jury, the prosecutor handling the investigation hadn't told us that he was interviewing Mr. Paylor, I guess for investigative reasons, to maintain the integrity of the ongoing investigation. We weren't aware that he was being interviewed, that he was testifying in the grand jury.*

*The prosecutor and the FBI agent didn't interview any of the other three officers who were involved in the case. They didn't interview the only other adult who was present in the home at the time of the arrest that could have corroborated or contradicted the allegations that were being made.*

*And he also wasn't aware that another witness told the ATF that Mr. Paylor was coming from a store, and not from the probation office, at the time he was arrested"*
(Paylor motions hearing March 7, 2019, transcripts 47:11)

In addition Martinez further explained before Judge Holland how Hines vetting Paylor's story of not having a gun:

*The Probation records reflect that he left at 9:25 a.m. He encountered the officers at 11:10. The Probation building at 22nd and Guilford is just blocks away from the 600 block of Bartlett Avenue. Maybe a 10-minute walk, maybe 15 if you're walking really slow. There's a full hour and a half between him leaving Probation and encountering the officers at 600 Bartlett.*

17

*So the idea that the probation visit that morning somehow corroborates the story just isn't true.*

(Paylor motions hearing March 7, 2019, transcripts 48:10)

The important essences of Horn's and Martinez's statements in front of Judge Holland are:

- Martinez statements were based on a "Unified Position of our office (USAO)"
- Paylor's jail calls were not vetted through Martinez prior to Paylor's grand jury testimony
- The vetting of Paylor's jail call statement that he did not have a gun because he was coming from a meeting with his probation officer – WAS STAGED  by Hines and Wise and falsely corroborated Paylor's story. The time does not add up and Paylor had plenty of time to retrieve a previously hidden gun.
- Horn's position is the handling of Paylor's grand jury testimony by Hines is incredible and unbelievable. In other word, Hines and Wise are two highly educated and experienced AUSAs. How could they not properly vet Paylor's story?

With Wise alluding to dozens of cases like Paylor, one should ask, "How many more jail call candidates did not have their stories PROPERLY vetted and given the opportunity to lie against Hersl before the grand jury? Dozens? Hersl knows one for sure – Jimmie Griffin. With discovery and other information being withheld from him, Hersl suspects dozens.

**4.** Martinez guesses he was not consulted on Paylor for supposes of maintaining the integrity of the investigation. Martinez's statement is puzzling and falls on deaf ears for a number of reasons:

- Wise and Hines or USAO supervision could have vetted the Paylor case through Martinez without disclosing any parts of the GTTF investigation.

- At the time of Paylor's grand jury testimony, June 15, 2017, the GTTF investigation was publicized as on-going and the FBI was advertizing for victims of GTTF abuses to come forward.
- It is difficult to believe that AUSA Martinez couldn't be trusted with confidential information
- Knowing the situation of having dozens of jail call candidates and a large number of prosecutors with historic knowledge, it is difficult to believe that the USAO didn't coordinate the vetting of candidates with the prosecutors.

**5.** Wise states that, "At the time the Government called Paylor to testify, it did not believe he would perjure himself" and "Hersl's argument that the government suborned perjury is baseless. In an indirect way, Wise is revealing that he accepts the "Unified position of the office" that Paylor did lie to the grand jury. Whether the government knew prior to Paylor's testimony that he was going to lie is the question at hand. The facts relating to suborning perjury are as follows:

- In a May 23, 2017, phone call to Paylor's public defender, Katherine Tang Newberger, Hines requested to speak to Paylor. (See Newberger Affidavit, EXHIBIT Q)
- On June 13, 2017, Newberger alerted Hines that Paylor's description of events that Paylor would repeat to Hines differed from the statement of facts in his plea deal.
- Hines arranged and scheduled for Paylor's: out of state transfer to Baltimore; an interview session on June, 15, 2017; and immediately thereafter a session with the grand jury.
- Sometime prior to June, 15, 2017, Hines attempted to corroborate the "Paylor not having a gun" story with Paylor's parole officer. As stated by Martinez, normally it would take 10-15 minutes to walk between the Parole Building and Paylor's house. Paylor had 105 minutes to make the walk and plenty of time to retrieve his gun. Hersl knows too well from experience that people stash their guns in cars, vacant houses, and friend's apartments nearby the Parole Building and retrieve

them after meeting their parole officer. Hersl also knows too well from experience that prosecutors know of this common practice of parolees that have not given up the illegal drug business. Hersl looks at the facts associated with Paylor's "did not have a gun" story; knows the common practices of drug dealers hiding guns, and making false jail calls; and concludes Hines manipulated the facts (as logically explained by Martinez) in order to falsely corroborated Paylor's story.

- Newberger states in her affidavit that Paylor and she met with Hines, Jensen and another FBI agent for an interview on June, 15, 2017. It appears from paragraph 4 in Newberger's avadavat that Hines and his interview team guided or led Paylor by introducing his jail calls to him (EXHIBIT R). After going over his jail calls Paylor reiterated the calls and gave false testimony against Hersl and Burns. At this point, Hines and possibility Jensen and others knew Paylor's story was falsely corroborated; Paylor's testimony was guided and false; the 302 form that recorded the interview with Paylor was written knowing the whole Paylor episode was manipulated to make Hersl and Burns to appear as two dirty police officers that should be tried and sent to jail; Hines suborned Paylor's perjury against Hersl and Burns.

- Paylor used the "Paylor did not have a gun" story in his jail calls which was presented to the grand jury. (See EXHIBIT R)

- Hines knew the "Paylor did not have a gun" story was not true prior to Paylor's grand jury testimony.

- Paylor lied to the grand jury and Hines suborned Paylor's perjury for a second time in one day.

- The full involvement of co-prosecutor Wise in Paylor's perjury is not known. As co-prosecutor with a very close relationship with Hines, Wise may have partaken in the suborned perjury. Otherwise he was most likely to conspire, abetted, and cover-up the suborning of perjury.

- FBI Agent Jensen and other FBI investigators unknown may have been involved in conspiring, abetting, and covering-up the suborning of perjury.

20

- All people involved with Hines suborning of perjury, whether through conspiring, abetting, or cover-up – OBSTRUCTED JUSTICE
- June 15, 2017, thru July 2, 2018, Hines, Wise, Martinez, Schenning, Jensen, and others unknown in the USAO and GTTF investigation team covered up the suborning of perjury and obstructed justice.

### C. Tactical/Stratigical Prerogative

With regard to Hersl's Ineffective Assistance of Defense Counsel (IADC) claims, Wise asserts all of Hersl's claims do not meet the 1st prong of *Stickland*. Wise's objection is Hersl's defense counsel enjoys the legal privilege to make tactical and strategical decisions without Hersl's consent in such matters as:

- What evidence should be introduced;
- what stipulations should be made;
- what objections should be raised; and
- what pre-trial motions should be filed.

Hersl has submitted 23 grounds for relief, numbered 8 thru 20, 30 thru 34, and 47 thru 51. Wise has not been specific with regard to his concern on each IADC ground for relief. Hersl challenges Wise's belief that all of Hersl's claims fall within the tactical/strategical argument as Hersl has previously stated that each IADC claim is based on constitutional abuses against him.

Generally speaking, Hersl understands and accepts that defense counsel needs and has latitude on decision making during the litigation of his case. However, that latitude is not absolute nor should it be. All of Hersl's 57 grounds for relief fall within the realm of constitutional abuses. Those rights are generally absolute with specific legal limitations that are spelled out. They are significance. When it comes to constitutional rights defense counsel has a duty to protect the defendant against abuses by the government.

In essence, Defense Counsel has the legal privilege to decide on the strategy to defend against constitutional abuses; but, defense Counsel cannot choose to ignore constitutional abuses.

In addition, Defense Counsel can't choose to:

- negate his duty to investigate a case, and to determine whether there is a sufficient factual basis for criminal charges
- totally ignore viable defense options when presented
- have no strategy to defend against wire fraud and RICO charges

### D. Illegal Search Warrants

Wise states the researching and presenting of errors in the investigation is not a ground for IADC. Wise states that Hersl takes issue with various affidavits because they are inaccurate; and, thinks his counsel should have litigated those inaccuracies by filing pre-trial motions.

Hersl disagrees with Wise's assessment of Hersl's argument.

First, Hersl's claim isn't that his counsel made a strategic decision not to file a pre-trial motion. Hersl's claim is that his counsel did not review the warrant documents to determine whether there is a sufficient factual basis for criminal charges and therefore was not prepared to approach the prosecutor to drop charges such as in the DeForge and Summerville cases or file pre-trial motions. Such a negligent act is a classic case of IADC.

According to ABA Standard 4-4.1(a), Defense counsel has a duty to investigate in all cases, and to determine whether there is a sufficient factual basis for criminal charges. In Hersl's case Defense Counsel failed to do so. Hersl recalls in discussions about the warrants, Defense Counsel stated that all of the warrants were signed by a judge and therefore they must be OK.

Defense Counsel's decision not to review the warrants is not a legal tactical/strategical decision. It was a time expedient cost effective decision. Defense Counsel obviously negated to put in the time to fully review the search warrant documents against Hersl and it resulted in Hersl's 4th amendment rights not being protected.

Second, in describing the warrant applications, Hersl goes way beyond the warrant applications being inaccurate. Hersl documented they are intentionally deceitful to the point that the probable cause against Hersl wasn't there or is falsified and the warrants were illegal. Wise does not provide a factual basis for his denying the warrant documents were deceitfully manipulated, possibly because they are obviously skewered as Hersl has documented in his 2255 motion.

Hersl documents 4th amendment violations by the prosecutorial investigation as such:

- GROUND 1 - Warrant No: 16-64 has no stated basis for probable cause;
- GROUND 2 – Exculpatory evidence of Gondo/Rayam May 27, 2016, was withheld from all warrants against Hersl
- GROUND 3 – Warrant application was deceitfully manipulated with regard to Hersl's involvement in Hamilton robbery
- GROUND 4 – Affiliants deceitfully did not fully disclose their crucial knowledge and experience that was material

Associated IADC claims are GROUNDS 8 thru 11 respectively.

Hersl 4th amendment rights were violated by the prosecutorial investigation team and in the government's response, Wise offers no denial or explanation.

Federal investigators can't disregard 4th amendment rights of citizens; but, in the case of Hersl they conducted illegal searches based off deceitful warrant applications.

Defense Counsel can't ignore protecting the client against 4th amendment abuses. If Defense Counsel would have done his homework and reviewed the warrant documents, an obvious pre-trial motion to suppress location history based on a no probable cause warrant (Warrant No: 16-64) regarding phone information searches would have resulted in dropping the wire fraud charges. Without wire fraud charges Hersl would have been found innocent of RICO charges.

In addition, Hersl documents a 14th amendment violations and a violation of Maryland Labor Law by the prosecutorial investigation:

**GROUND 6** - Affiliants Stayed Silent When Fellow Law Enforcement Officer (Hersl) Was in Imminent Danger of Death or Physical Harm Investigative

The associated IADC claim for GROUNDS 6 is GROUND 12.

Hersl doubts that Defense Counsel received any warrant documents on the Shropshire DTO investigation or Defense Counsel read the documents if he received them. The documents bring to light entrapment as a possible modified non-affirmative defense. Hersl's claim with regard to IADC is that counsel was not up to speed on the warrant documents, whether he received them or not, and DID NOT make a choice on defense strategy where he had a choice. In other words, based on information about entrapment presented, Defense Counsel had the prerogative to weigh his options and choose to use or not to use a possible modified non-affirmative defense. However, Defense Counsel doesn't have the prerogative to not read the warrant documents or totally ignore that there are options.

Hersl stands his ground. Grounds 1 thru 4 and 6 are serious violations by the prosecutorial investigation team and a violation of his fourth and fourteenth amendment rights in addition to Maryland Labor Law. Wise dismisses GROUNDS 1thru 4 and 6 but does not deny the prosecutorial misconduct or the violation of Maryland Law. Defense Counsel did not thoroughly review the documents if at all and was ineffective in protecting Hersl's against constitutional abuses.

### E. Excessive Case Load

Wise takes exception to the excessive workload argument for Defense Counsel by stating that Hersl's case did not take precedent but was not forgotten. Wise also states that none of Hersl's inferences are grounds for an IADC claim.

Hersl again stands his ground. Obvious, Defense Counsel did not forget Hersl, he was at trial. What Hines and Wise fails to understand is that their "head was in the game". They were motivated to take on their case against Hersl. Defense Counsel's "head was in the game" only partially but not totally. When Hersl hired Defense Counsel, there was no mention of his involvement with El Chapo. Defense Counsel has his own small law firm without a secretary or assistant. He generally handles his cases alone and relies on the assistance of Marta Khan for writing motions.

The rewards of a million dollar case are apparent but the time demands are also. Defense Counsel signed a discovery agreement with the USAO but did not show one piece of discovery to Hersl for his review, study, and analysis.

### F. Discovery

Wise states that signing a discovery agreement was not unreasonable. Wise looses perspective of the constitution. Of course if you are the prosecutor or Defense Counsel you may view signing the discovery agreement as being reasonable. But if you are the Defendant it is totally unreasonable. Hersl gave up his 6th amendment right to fully confront his accusers. Hersl makes the point that El Chapo did not give up his right to fully access discovery materials. Obviously a discovery agreement in New York would be unreasonable. In El Chapo's case the Judge, prosecutor, and defense counsel all bent over backwards to make sure El Chapo had 24/7 access to discovery documents on a secure computer with a full time public defender to review his documents and case with him. When asking what is reasonable, obviously, reasonable would be providing the same access to discovery in Maryland as New York. Not providing Hersl with full access to discovery was not only unreasonable but also wrong. Again it violated Hersl's constitutional rights.

### G. Proffer Agreement

Wise argues Hersl did admit to robbing civilians and otherwise stealing money and that there were no discussions between Defense Counsel and Hersl regarding admitting to taking money prior to trial. Wise provides excerpts from a 302 which the FBI uses to document interviews.

In Wise's reply he is reluctant to mention many details about the proffer and the 302's.

First, Wise negates to respond to Hersl's side of the story on ECF 638 at 35. Hersl claims that the proffer agreement was signed under the influence of narcotics. Such an action is unethical and makes the agreement non-binding. At the second proffer session, the non-binding agreement was still in effect.

Second, Wise forgets that because of suborning perjury AGAINST HERSL, the 302's of Paylor and Griffin are presumed to be false. Co-prosecutors Wise and Hines and investigator Jensen have lost all credibility on 302s. However, Wise wants the public to think they are credible.

Third, Wise negates to report on the episodes where Hersl denied taking money such as Griffin, Tate, and Hamilton. It didn't matter. Wise charged Hersl with robbing them all.

Nevertheless, the so called proffer sessions were no more than discussions that took place with the only agenda on the table unfortunately being "Can the Government Squeeze Hersl into a Plea Deal". Hersl states in ECF 638 at 36 the discussions were in a "what if scenario", if the Defendant admitted to taking money but not a 924(c) charge(s), what kind of jail time could be negotiated. In the end, the government's strong arm remained strong.

At the conclusion of the second proffer, the Defendant remained steadfast that he did not take any money from subject drug dealers, neither theft nor robbery. There were no signed agreements, no oral and/or written confessions and no signed plea deal. There were only intimidating "what if scenario" discussions that ended up non-fruitful.

If Wise wants to say that Hersl admitted to taking money in the context of a "what if scenario" while being intimidated with spending the rest of his life in jail, he would probably be correct. However, based on Paylor and Griffin 302s, Hersl's 302 may be questionable.

Nearly four months after the second proffer session, in document 224, dated December 4, 2017, the "Brady Motion", the argument centered on the prosecutor withholding information that

26

would prove the Defendant acted legally when money was being seized and therefore the legal taking of money can't be viewed as robbery. Counsel pointed out in the motion, "If Mr. Hersl took the money at some point thereafter, out of the presence of, and without the knowledge of the arrestee, the act was theft". The key word being "IF" denotes that there was no admitting to taking money, at least in the minds of Hersl's Defense Counsel. Remember, Hersl was in solitary confinement at the time and his "head wasn't in the game". Oh! It was reported that Defense Counsel had about 300, 000 El Chapo discovery documents and his "head wasn't in the game" as well.

Nevertheless, Hersl stands his ground as detailed in ECF 638 at 33-39, that Defense Counsel "poisioned the jury" with his opening remark, "Hersl took money". It was a decision he made but a decision that was unreasonable and flawed from the beginning. As argued by Wise, Defense Counsel has the privledge to make tactical/strategical decisions but not decisions that are horrendous as such to "poisioned the jury". In other words, when Defense Counsel engages in "poisoning the jury" he becomes ineffective in representing his client.

## VIII. Sentence

On page 4 of the 2255 supplement 1 (ECF 662), Hersl brings up the calculation for his total sentencing offense level was 37. Hersl believes and has justified a sentencing offense level of 20 based on a revision of adjustments that the prosecutor aggressively fought for and Defense Counsel took no objection to.

Wise has only argued that the ground (GROUND 57) doesn't meet the default procedural bar for 2255 submission. Hersl argues otherwise in Section VI.B of this reply.

## IX. Relief Requested

    A. Based on a fair use of the sentencing guidelines (See Setion VIII), Hersl request the court to reconsider his sentence.

B. Based on the severe miscarriage of justice plagued upon Hersl he request the
conviction against him be vacated, the case against him be dismissed, and his
immediate release from prison.


## X. Consideration for Immediate Relief

Within his original 2255 motion Hersl has proven his innocence and shown the government's
constitutional due process violations against him. The USAO has displayed animus against Hersl
which Hersl has revealed by acts of criminal malfeasance, prosecutorial misconduct, and illegal
activity. In addition, Hersl was not protected from the constitutional abuses of the USAO by
Defense Counsel. Hersl was ineffectively represented by a Defense Attorney that obviously had
an excessive workload.

Due to the above, Hersl further request the court consider the relief requested to be immediate.
Such obvious injustice makes his predicament unjust and his continued incarceration an
unwarranted burden to bear.

## VERIFICATION

I have read the foregoing **"REPLY TO GOVERNMENT RESPONSE 2255 MOTION TO VACATE EMERGENCY CONSIDERATION REQUESTED"** and hereby verify that the matters alleged herein are true, except as to matters alleged on information and belief, and as to those, I believe them to be true and correct. Executed at the U.S. Medical Center for Federal Prisoners, Springfield, Missouri, on this 16th Day of August, 2021.

Respectfully submitted,

Daniel Thomas Hersl by
Gene Shott

Daniel Thomas Hersl
Federal Inmate # 62926-037

## CERTIFICATE OF SERVICE

I certify under penalty of perjury that the forgoing "MOTION FOR U.S. ATTORNEY TO SIGN GOV'T RESPONSE with EMERGENCY CONSIDERATION REQUESTED" was delivered by hand on the 16th Day of August, 2021 to:

> United States District Court
> Office of the Court's Clerk
> 101 West Lombard Street
> Baltimore, Maryland 21201

Mr. Hersl respectfully requests the Court's Clerk Office to serve all other interested parties by electronic notification and serve the movant with a stamped and filed copy of this motion.