IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | | |
|---|---|---|---|
| UNITED STATES | * | | |
| v. | * | Case No.: | GLR-17-106 |
| | * | | |
| DANIEL THOMAS HERSL | * | | |

**EMERGENCY MOTION FOR A REDUCED SENTENCE PURSUANT TO
18 U.S.C. § 3582(C)(1)(A)(I)**

Daniel Hersl is dying of metastatic prostate cancer which has metastasized to his lymph nodes, liver, lungs, his ribs and upper sacrum. According to his doctor in the Bureau of Prisons ("BOP") his life expectancy is "less than 18 months," as of September 22, 2023. *See* ECF 790 Ex. 1. We respectfully submit this renewed motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in light of Mr. Hersl's terminal diagnosis and because the 18 U.S.C. § 3553(a) calculus has materially changed. Specifically, as fully explained below, Mr. Hersl has publicly accepted full responsibility for his conduct; ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ he has a commendable record of good behavior during his 89-months of incarceration, despite two minor disciplinary infractions he sustained during the pandemic; his Sentencing Guidelines Range would be materially different after the amended acquitted conduct guideline takes effect in November of 2024; and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

We respectfully submit that the sentencing factors of 18 U.S.C. § 3553(a), as they exist today, firmly support Mr. Hersl's immediate release so that he may spend his remaining days with his young son and family. Due to Mr. Hersl terminal condition, counsel respectfully requests that the time for the government's response be limited to **seven days** from this filing.

I. **Relevant Background**

Daniel Hersl is currently serving an eighteen-year (216 month) sentence after being convicted by a jury of participating in a Racketeering Conspiracy, in violation of 18 U.S.C. §§ 1962(d) and 1963 (Count One); Racketeering, in violation of 18 U.S.C. §§ 1962(c) and 1963 (Count Two); and Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) (Count Five). Mr. Hersl and his co-defendant at trial, Marcus Taylor, were acquitted of Possession of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Six).

As of today, Mr. Hersl has served more than 89 months in custody, which is more than half of his total sentence. He is set to be released on July 10, 2031, 85 months from now.

II. **Section 603(b) of the First Step Act of 2018**

The First Step Act of 2018 amended 18 U.S.C. § 3582(c)(1)(A)(i) to allow the sentencing judge jurisdiction to consider a defense motion for a sentence reduction based on "extraordinary and compelling reasons" whenever "the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" First Step Act of 2018, § 603(b), Pub. L. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018). The United States Sentencing Commission, pursuant to its authority under 28 U.S.C. § 994, has stated that such reasons exist, in part, when a defendant "is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory) A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer[.]" U.S.S.G. § 1B1.13(b)(1)(A).

In its previous opinion and order, the Court held that it is "undisputed that [Mr. Hersl] suffers from a significant life-threatening terminal medical condition making him eligible to seek

2

compassionate release under § 3582." *See* Dkt. 809 pg. 3. If extraordinary and compelling reasons exist for resentencing, as they do here, the Court must then evaluate the sentencing factors set forth in 18 U.S.C. §3553(a) as they exist today. *See Pepper v. United States*, 562 U.S. 476, 491 (2011) (holding that "evidence of post sentencing rehabilitation may plainly be relevant to 'the history and characteristics of the defendant'" and "'the need for the sentence imposed'" (quoting 18 U.S.C. § 3553(a))). As explained below, the § 3553(a) calculus is significantly different than in October of 2023 and now compels Mr. Hersl's immediate release.

### III. Institutional Request for Compassionate Release

On March 19, 2024, Mr. Hersl submitted a renewed request for a sentencing reduction to the Warden of MCFP Springfield, where he is serving his sentence. On March 20, 2024, Mr. Hersl's request for compassionate release was denied by the Warden of MCFP Springfield. Thus, Mr. Hersl has satisfactorily pursued administrative remedies, as required by § 3582(c)(1)(A).

### IV. Mr. Hersl is eligible for a reduced sentence because he is suffering from a terminal illness, as defined in U.S.S.G. § 1B1.13(b)(1)(A).

As this Court has previously recognized, Mr. Hersl establishes "extraordinary and compelling" reasons for a sentence reduction based on his metastatic prostate cancer diagnosis, which is "a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory) [with a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period)[.]" U.S.S.G. § 1B1.13(b)(1)(A). Attached as Ex. D ███████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████

3

███████████████████████████████████████████████

██████, which directly impact the analysis under 18 U.S.C. §3553(a), as discussed below.

Given these "extraordinary and compelling" reasons, the Court must now analyze the sentencing factors of 18 U.S.C. § 3553(a), as they exist today, to determine whether Mr. Hersl's resentencing is appropriate. Given the below factors, we respectfully submit that it is.

V.  **The sentencing factors of 18 U.S.C. §3553(a), as they exist today, support Mr. Hersl's resentencing and immediate release.**

In November of 2023, the Court denied Mr. Hersl's first compassionate release motion, finding that while his terminal illness qualified as an "extraordinary and compelling" reason, the factors enumerated in 18 U.S.C. §3553(a) did not support his release. Specifically, the Court found that Mr. Hersl's crimes were "extremely serious" and "irreparably damaged the victims of their criminal acts [and] the reputation of the Baltimore City Police Department[.]" Dkt. 809 pg. 3. The Court also found that Mr. Hersl's BOP disciplinary record, where he has two minor infractions in almost eight years of custody, "demonstrates a continued lack of personal accountability." *Id*. Finally, the Court stated that BOP can manage his palliative care and "he is able to interact with his family during his period of incarceration." *Id* pg. 4.

At the outset, we agree with the Court, in part. Mr. Hersl's crimes were extremely serious and his involvement with the GTTF conspiracy had a lasting detrimental effect on the law enforcement community's reputation. For his crimes, he was sentenced to a significant period of incarceration, 216 months, which was six months higher than the bottom of his Sentencing Guidelines range. Now, those Guidelines, as fully discussed below, are materially different given the Sentencing Commission's amendment to the acquitted conduct Guideline. But regardless of the Guidelines' arithmetic, his crimes deserve significant punishment. However, the sentence imposed by Judge Blake was certainly never intended to be a death sentence. Dying in prison is a

unique form of punishment only reserved for the worst of offenders. We submit Daniel Hersl is not among those offenders, especially given the changed circumstances which have materially altered the §3553(a) analysis. Mr. Hersl's record as an officer was irreparably tarnished by his criminal conduct, but there can be no doubt he spent many years serving the City of Baltimore and he is indeed more than a sum of his mistakes. He deserves to die with dignity. The Supreme Court has said that the cornerstone of federal sentencing is that the Court "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue." *Pepper v. United States*, 562 U.S. 476, 487 (2011)(*quoting Koon v. United States*, 518 U.S. 81, 113 (1996)).

    **a. Mr. Hersl has accepted full responsibility for his conduct.**

Mr. Hersl accepts full responsibility for his wrongdoing. *See* Ex. A, a letter to the Court from Daniel Hersl. As the Court is aware, Mr. Hersl proceeded to trial and was convicted on counts One, Two and Five. At trial, Mr. Hersl's central defense was that he committed offenses his trial counsel categorized as thefts, rather than racketeering acts. The jury rejected those arguments, but Mr. Hersl never put forward the position that he was not complicit in wrongdoing. At sentencing, Judge Blake did not afford Mr. Hersl a two-point reduction for accepting responsibility but noted that "[t]here may or may not be something to take into account under 3553[a], but I don't believe that the presentation of evidence, the admissions that were made … amounts to an acceptance of responsibility within the meaning of the guidelines, so I'm not going to reduce it further." Sent. tr. pg. 44.

On April 17, 2024, at the direction of Mr. Hersl, undersigned counsel filed a notice of dismissal of Mr. Hersl's outstanding claims under 28 U.S.C. § 2255, giving up his last avenue of post-conviction review. *See* Dkt. 835. Attached to the notice of dismissal was a letter from Mr.

5

Hersl in which he publicly took responsibility for his actions. In part, Mr. Hersl states,

> I want you, Judge Hollander, Judge Russell, Judge Blake, the rest of the Federal/State Justice system, my trial lawyer Bill Purpura, my family, the Baltimore Police Department, the citizens of Baltimore and all the hard working people that make the city run as well as anyone else that the G.T.T.F. scandal may have affected to know that I'm truly sorry for the way myself and others that I worked with acted and treated others during our time as Police Officers.

Dkt. 835, Ex. A.

Additionally, Mr. Hersl has written a letter to the Court accepting responsibility for the abuse of the position of trust he was put in and apologizing for his actions. In his letter, he states that "there is not a day that has went by in these last 7 plus years since I've been incarcerated that I don't think about my actions, and regret my decisions." *See* Ex. A. Mr. Hersl continues:

> With my heath on my mind, I want to seek peace with my actions and ask for forgiveness from the people of Baltimore, Victims of the G.T.T.F. and everyone affected. I know the G.T.T.F. scandal has affected a lot of people and has placed the Baltimore Police Department in a negative light. I take responsibility for that and deeply regret my actions that brought shame to the department that I served. The list of people affected could go on and on so please forgive me for not directly mentioning anyone specifically that has been affected. I truly offer my sincere apologies to everyone.

*Id.*

Mr. Hersl knows his actions caused real harm to countless people in the City of Baltimore. The GTTF's crimes caused a substantial breach of the public's trust in law enforcement. Some will never accept an apology from Daniel Hersl, and he certainly understands that. However, at the end of his life, he is doing all he can to show that he is capable of rehabilitation and redemption. "Only the man who has had to face despair is really convinced that he needs mercy. Those who do not want mercy never seek it. It is better to find God on the threshold of despair than to risk our lives in a complacency that has never felt the need of forgiveness." Thomas Merton, *No Man Is an Island*, Shambhala Publications, 1983, pg. 21.

6

███████████████████████████████████████████████████

███████████████

   b.  ███████████████████████████████████████

      █████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████

   ██████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████



    **c. Despite his two disciplinary infractions in 88 months, Mr. Hersl has been a model inmate.**

The two disciplinary infractions that Mr. Hersl received are relatively minor and require context. In September of 2020, Mr. Hersl was written up for "refusing to obey an order." At the time, Mr. Hersl's facility was in a state of constant lockdown due to the pandemic. There was limited movement allowed to prevent the virus from spreading. Mr. Hersl was asked to start

8

working in the kitchen, even though he had a job in recreation. Kitchen work was the job most susceptible to the virus given the correctional officers coming in and out. Mr. Hersl had also suffered two bouts of Covid, while unvaccinated, and was very concerned that a third infection may be deleterious to his health. He was initially written up for refusing a work assignment, which was inaccurate as he already had a work assignment. He tried to explain his reasoning respectfully to the Lieutenant but without success, even though his case worker stated that he should not have been written up because he was in fact working and had a genuine concern for his health. Nevertheless, Mr. Hersl accepted his punishment, which was spending time in the Special Housing Unit—aka, the box.

In August of 2022, Mr. Hersl received his second and final disciplinary infraction. Mr. Hersl was granted special permission to communicate with his codefendants through the Trulinks system, an inner-BOP email system, in connection with their ongoing post-trial, 28 U.S.C. § 2255 motions. Instead of communicating directly with one of his codefendants, he communicated with a codefendant's wife and passed communications related to their filings through her. At the hearing he was told that the jail's special investigations section treated this as if he was on a prohibited three-way call and found him guilty.

In relation to these relatively minor offenses, Mr. Hersl was encouraged by jail officials who knew and worked alongside Mr. Hersl to appeal the hearing decisions. In both cases Mr. Hersl declined to do so because he feared retaliation from correction officers.

Despite these minor offenses, Mr. Hersl has been a model inmate. According to his BOP Reentry Plan, attached as Ex. C, despite Mr. Hersl's two infractions he is not considered a "management problem" and is listed as a "minimum recidivism" risk. *See* Ex. C pg. 1.  He has consistently maintained employment in the BOP. From approximately July 2018 to November

9

2018, he was a health companion at FMC Rochester, in Rochester Minnesota; from January 2019 to January 2020, he worked in food service at MCFP Springfield; from January 2020 to September 2020 he worked in recreation services at MCFP Springfield; from October 2020 to April 2022 he worked as an orderly and sanitation worker for housing unit 8-2 at MCFP Springfield; and from May 2022 through present day he is employed at commissary services at MCFP Springfield. Throughout his employment with BOP, he "has consistently earned average or above average work evaluations during this period of incarceration." *See Id*. pg. 2

Despite his terminal condition, and the near-constant pain he suffers, Mr. Hersl has not stopped working and he has accumulated an impressive trove of First Step Act credits. As of May 24, 2024, he has accrued a total of *1,965 program days*, 580 days towards residential reentry/halfway house release, and 365 days towards his release. *See Id*. pg. 5.

As explained below, Mr. Hersl's Guidelines range would have been materially different if he was sentenced pursuant to the new amended Guidelines for acquitted conduct. If he were to receive a sentence six months above the bottom of his Guidelines range, as he was at his initial sentencing, he would be immediately released to a halfway house based on his good time and First Step Act credits, regardless of his terminal condition.

> d. **Mr. Hersl's Sentencing Guidelines Range would be significantly lower if he were sentenced after the amended acquitted conduct guideline takes effect in November of 2024.**

Mr. Hersl and his co-defendant at trial, Marcus Taylor, were acquitted of Possession of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Six). Despite the jury's not-guilty verdict as to Court Six, and consistent with U.S.S.G. § 1B1.3 at the time, the Court found that Mr. Hersl possessed his service firearm during a crime of violence, i.e., during the Hobbs Act robberies, and was therefore assigned five levels pursuant to

U.S.S.G. § 2B3.1(b)(2)(C) in Groups 1-5. *See*, Presentence Report ("PSR") ¶¶ 28, 34, 41, 48, 56, and 75. Based on the Court's findings, Mr. Hersl's base offense level was 37, which in Criminal History Category I resulted in an advisory range of 210-262 months incarceration. *Id*. ¶ 111.

The Court sentenced Mr. Hersl to 216 months' incarceration, six months above the bottom of his advisory guidelines range.

On April 17, 2024, the United States Sentencing Commission voted to promulgate amendments to the federal sentencing guidelines, which includes an amendment to U.S.S.G.§ 1B1.3. Under the new amendment, which takes effect November 1, 2024, U.S.S.G. § 1B1.3 is amended to include the following sub section:

> (c)  *Acquitted Conduct.*—Relevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction.

*See*, www.USSC.gov, Amendments to the Sentencing Guidelines, available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202405_Amendments.pdf (last visited on June 4, 2024). If Mr. Hersl's sentencing took place in November of 2024, he would not receive the five-level increase pursuant to U.S.S.G. § 2B3.1(b)(2)(C) for the acquitted conduct—i.e., Count Six - Possession of a Firearm in Furtherance of a Crime of Violence, 18 U.S.C. § 924(c)(1)(A)(i). Therefore, his offense level would be 32, not 37, and his advisory sentencing guidelines range, in Criminal History Category I, would be 121-151.

If the Court sentenced Mr. Hersl in the same manner and added six months to the bottom of his guidelines range, his likely sentence would have been 127 months—and with 15% deducted for good time he would serve approximately 108 months. As of this filing, he has served 89 months incarceration. Again, Mr. Hersl has accrued a total of 1,965 program days, 580

days towards residential reentry/halfway house release, and 365 days towards his release. In other words, if he were sentenced under the new acquitted conduct Guidelines, and assuming he received a sentence of 127 months, he would be immediately released to a halfway house.

This changed sentencing landscape would have undoubtedly altered Mr. Hersl's ultimate sentence. As the Court knows, the guidelines are advisory, but they do have an anchoring effect on the sentencing and create the framework for the court's decision. In a recognition that the guidelines have an anchoring effect on the ultimate sentence, the court in *United States v. Smith*, No. 14-CR-189-TSC, ECF No. 76 at 3-5 (D.D.C. May 14, 2020), held that the fact that the defendant no longer qualified as a career offender—even though the defendant's original sentence fell within the *current* non-career- offender guidelines range—was sufficient on its own to establish an "extraordinary and compelling" reason for relief. Similarly, the U.S. District Court for the Western District of Virginia found a now-inapplicable career offender enhancement was sufficient on its own to establish "extraordinary and compelling" reasons for sentencing relief even though the defendant had received a 151-month variant, non-career offender sentence that was significantly below the advisory career offender guidelines range of 262 to 327 months. *See United States v. Trice*, No. 7:13CR00034-001, 2021 WL 402462, at *3 (W.D. Va. Feb. 3, 2021).

Here, Mr. Hersl's terminal illness is an independent basis to find that extraordinary and compelling reasons exist for his resentencing. Additionally, the Court is compelled to consider the changed circumstances of the amended guidelines analysis when it conducts its review of the factors enumerated in 18 U.S.C. §3553(a). The change in the acquitted guidelines is considerable for Mr. Hersl. His guidelines range would be *five levels lower*, and as stated above, when considering his good time and First Step Act credits, he would be immediately released to a halfway house, regardless of his terminal illness.

e. █████████████████████████

██████████████████████████

██████████████████████████

██████████████████████████

██████████████████████████

████████████████



█

██████████████████████████

██████████████████████████

██████████████████████████

██████████████████████████

██████████████████████████8

13



███████████████████████████████████████

      **f.   The BOP cannot provide adequate palliative or hospice care.**

Before his diagnosis, Mr. Hersl ████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████ Mr. Hersl is facing the end of his life a thousand miles away from his young son and family, who cannot afford to visit him. Mr. Hersl, unsurprisingly, is suffering from severe depression. Mr. Hersl's acute depression, in addition to the physical pain he endures, is a daily struggle. Severe depression "is a sense of poisoning that pervades the self at the self's most elementary levels. *It* is a nausea of the cells and soul." David Foster Wallace, *Infinite Jest* at 695 (1996). The pain of being incarcerated while severely depressed, and suffering the physical pain and impending doom occasioned by his terminal cancer is Mr. Hersl's primary experience of punishment. His continued incarceration might satisfy 18 U.S.C. § 3553(a)'s call to reflect the seriousness of the offense, but when considering his terminal cancer, his acute depression, and the physical pain he endures, all while being over a thousand miles from his family, his continued incarceration is not just punishment. Justice and respect for the law require a sentence which is particularized to the offender and his unique circumstances.

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████ It goes without saying that BOP is not a hospice facility. He will need increased pain management and help with daily activities as his cancer progresses. Mr. Hersl has committed serious crimes,

15

but he is still deserving of the human dignity afforded to those suffering from a terminal illness. He has the same needs as all terminal cancer patients: █████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ He will continue to suffer more than most inmates, both physically and emotionally, if he is not released. The Court "cannot close [its] eyes to the conditions a particular defendant [experiences] in prison.... [T]he prison environment must be considered by the sentencing judge in estimating total harm and benefits to prisoner and society—a utilitarian as well as a compassionate exercise." *United States v. D.W.*, 198 F.Supp.3d 18, 23 (E.D.N.Y. 2016 J. Weinstein).

\*   \*   \*

To comport with the goals of sentencing, the Court must consider Mr. Hersl's §3553(a) factors, at present, "in light of the circumstances as they [stand] at the time of his resentencing." *Werber v. United States*, 149 F.3d 172, 178 (2d Cir. 1998) (citing *United States v. Core*, 125 F.3d 74, 77 (2d Cir. 1997) ("When the trial court undertook to resentence [the defendant] . . . it was required to consider him as he stood before the court at that time.")).

Here, the §3553(a) calculus has changed significantly since Mr. Hersl's initial sentencing and his last request for compassionate release: He would face dramatically lower Guidelines based on the recent acquitted conduct amendment; he has publicly accepted responsibility; █

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████ and, at this point, he is in dire need of palliative and hospice care.

**g.** ████████████████████

████████████████████████████████████████████████████████████████

16

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████

### VI.     Conclusion

Mr. Hersl's terminal illness is an "extraordinary and compelling" reason, which requires his immediate release. Granting Mr. Hersl's release under these unique and dramatically changed circumstances would also satisfy the goals of 18 U.S.C. §3553(a). Again, Mr. Hersl has committed serious crimes, which deserve severe punishment. He has suffered his punishment more than most and at this point, the sentencing analysis is markedly different than when the Court last evaluated his motion for compassionate release. His continued detention under these dire circumstances is simply greater than necessary to achieve justice.

For the forgoing reasons, Mr. Hersl respectfully requests that the Court reduce his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A).

Respectfully submitted,

/s/ Christopher Madiou
Christopher Madiou, Esq.
6305 Ivy Lane, Suite 700
Greenbelt, MD 20770
917-408-6484
chris@madioulaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on this day, July 5, 2024, a copy of the foregoing was served on all parties of record via ECF.

_____
Christopher Madiou, Esq.